Ross T. Johnson
Shelby B. Stover
KOVACICH SNIPES JOHNSON, P.C.
P.O. Box 2325
Great Falls, MT  59403
(406) 761-5595
ross@justicemt.com
shelby@justicemt.com

Gale R. Gustafson
Daniel T. Jones
GUSTAFSON LAW OFFICES
400 South Main Street, Suite 101
Conrad, MT 59425
(406) 278-7521
gustafsn@3rivers.net
djones@glo.law

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

_____

| | | |
|---|---|---|
| KARI ANDERSON; MAKAYLA ANDERSON; and L.A., a minor child, by and through her Conservator William Hunt, Jr., | ) ) ) ) ) | CAUSE NO. CV-20-77-SPW-TJC |
| Plaintiffs, | ) ) | **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR** |
| vs. | ) ) | **PARTIAL SUMMARY JUDGMENT RE: AFFIRMATIVE** |
| STATE OF MONTANA, by and through the MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES, | ) ) ) ) ) | **DEFENSES** |
| Defendant. | ) ) | |

_____

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF UNDISPUTED FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      CFSD had a duty to LA and Makayla. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     CFSD is not shielded from liability meaning its Fourth
        through Eighth Affirmative Defenses must be stricken . . . . . . . . . . . . . . . 9

        A.      CFSD is not immune from liability under § 2-9-103, MCA
                (Affirmative Defenses Five and Six). . . . . . . . . . . . . . . . . . . . . . . . 9

        B.      CFSD is not immune under § 41-3-203, MCA
                (Affirmative Defense Seven). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.      CFSD is not immune under the public duty doctrine
                (Affirmative Defense Four) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.      CFSD does not qualify for quasi-judicial immunity
                (Affirmative Defense Eight) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.    Plaintiffs' negligence and negligent infliction of emotional distress
        claims are not barred by the statute of limitations nor have they
        waived their claims, meaning CFSD's First and Third Affirmative
        Defenses must be stricken. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.     Plaintiffs' claims are not barred by issue preclusion or claim
        preclusion, therefore this Court must strike CFSD's Second
        Affirmative Defense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.      Plaintiffs did not fail to mitigate their damages . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF CONTENTS (continued)**

VI.   Makayla and LA were not contributorily negligent . . . . . . . . . . . . . . . . . . 18

VII.  The damages limitation provided for in § 2-9-108(1), MCA, does
      not apply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      A.   By its plain language, § 2-9-108(1), MCA, cannot apply
           (Affirmative Defense Fifteen) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      B.   The limitation on damages imposed by § 2-9-108(1), MCA,
           raises constitutional issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

           1.   Equal Protection - Article II, Section 4 of
                the Montana Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

           2.   Inviolate right to jury trial - Article II, Section 26 of
                the Montana Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES

*Alejo v. City of Alhambra*
    15 Cal.App.4th 1180, 89 Cal.Rptr.2d 768 (2000) . . . . . . . . . . . . . . . . . . . . 12

*Baltrusch v. Baltrusch*
    2006 MT 51, 331 Mont. 281, 130 P.3d 1267 . . . . . . . . . . . . . . . . . . . . . . . 17

*Barry v. Edwards*
    116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729 (1886) . . . . . . . . . . . . . . . . . . . . 23

*Berkovitz v. United States*
    486 U.S. 531, 108 S.Ct. 1954 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brewer v. Ski-Lift, Inc.*
    234 Mont. 109, 762 P.2d 226 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Brodie v. Summit Cty. Children Servs. Bd*
    51 Ohio St.3d 112, 554 N.E.2d 1301 (1990). . . . . . . . . . . . . . . . . . . . . . . 12

*Celotex Corp. v. Catrett*
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . . . . . . . . . . . . . . . . 5

*Chessman v. Hale*
    31 Mont. 577, 79 P. 254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*City of Great Falls v. Morris*
    2006 MT 93, 332 Mont. 85, 134 P.3d 692. . . . . . . . . . . . . . . . . . . . . . . . . 21

*Delaney & Co. v. City of Bozeman*
    2009 MT 441, 345 Mont. 181, 222 P.3d 618. . . . . . . . . . . . . . . . . . . . 19, 20

*Dept. of Health and Rehab. Servs. v. Yamuni*
    529 So.2d 258 (Fla. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Estate of Woody v. Big Horn County*
    2016 MT 180, 384 Mont. 185, 376 P.3d 127 . . . . . . . . . . . . . . . . . . . . 15, 16

# TABLE OF AUTHORITIES (continued)

*E.W. v. D.C.H.*
  231 Mont. 481, 754 P.2d 817 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Finstad v. W.R. Grace & Co.*
  2000 MT 228, 301 Mont. 240, 8 P.3d 778 . . . . . . . . . . . . . . . . . . . . . . . . 23

*Henry v. State Compensation Fund*
  1999 MT 126, 294 Mont. 449, 982 P.2d 456 . . . . . . . . . . . . . . . . . . . . . . 22

*Horridge v. St. Mary's County Dept. of Social Services*
  382 Md. 170, 854 A.2d 1232 (Md. App. 2004). . . . . . . . . . . . . . . . . . . . . . 12

*Jensen v. Anderson County DSS*
  304 S.C. 195, 403 S.E.2d 615 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kent v. City of Columbia Falls*
  2015 MT 139, 397 Mont. 190, 350 P.3d 9 . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Mammo v. Arizona*
  138 Ariz. 528, 675 P.2d 1347 (Ariz. App. 1983) . . . . . . . . . . . . . . . . . 11, 12

*Massee v. Thompson*
  2004 MT 121, 321 Mont. 210, 90 P.3d 394 . . . . . . . . . . . . . . . . . . . . . . . . 8

*Missouri Pacific R. Co. V. Humes*
  115 U.S. 512, 6 S.Ct. 110, 29 L.Ed. 463 (1885) . . . . . . . . . . . . . . . . . . . . 23

*M. W. v. Dept. o/Social & Health Services*
  149 Wash.2d 589, 70 P.3d 954 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Newville v. State, Dept. of Family Services*
  267 Mont. 237, 883 P.3d 793 (1994). . . . . . . . . . . . . . . . . . . 8, 10, 11, 13, 14

*Owens v. Garfield*
  784 P.2d 1187 (Utah 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES (continued)

*Pfost v. State*
      219 Mont. 206, 713 P.2d 495 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Radke v. County of Freeborn*
      694 N.W.2d 788 (Minn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rees v. State*
      143 Idaho 10, 137 P.3d 397 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reesor v. Montana State Fund*
      2004 MT 370, 325 Mont. 1, 103 P.3d 1019 . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sabia v. State*
      164 Vt. 293, 669 A.2d 1187 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schmill v. Liberty Northwest Inc. Corp.*
      2003 MT 80, 315 Mont. 51, 67 P.3d 290 . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Simpkins v. Speck*
      2019 MT 120, 395 Mont. 509, 443 P.3d 428 . . . . . . . . . . . . . . . . . . . . . . . 6

*State ex re. Workers' Compensation Division v. District Court*
      246 Mont. 225, 805 P.2d 1272 (1990) (n/k/a *Great Western Sugars*) . . . . 13

*Turner v. District of Columbia*
      532 A.2d 662 (D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Volk v. New York Life Insurance Co.*
      598 F.Supp.3d 979 (D. Mont.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*White v. State*
      203 Mont. 363, 661 P.2d 1272 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Woirbaye v. Montana Fourth Judicial Dist. Court*
      1998 MT 320, 292 Mont. 185, 972 P.2d 800 . . . . . . . . . . . . . . . . . . . . . . . 23

**TABLE OF AUTHORITIES (continued)**

*Ybarra v. John Bean Techs. Corp.*
        853 F.Supp.2d 997 (E.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6


**RULES**

Rule 56(a), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


**STATUTES**

§ 2-9-101(1), MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

§ 2-9-101(6), MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 2-9-103, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 2-9-104, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

§ 2-9-107, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

§ 2-9-108, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

§ 2-9-108(1), MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21, 23, 24

§ 2-15-102(10), MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 2-15-124, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 27-2-204(1), MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 27-2-401, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 41-2-203, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 41-3-101(2), MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES (continued)

§ 41-3-201, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 41-3-202, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 41-3-203, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## **<u>OTHER AUTHORITY</u>**

Montana Constitution, Article II, Section 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Montana Constitution, Article II, Section 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## **INTRODUCTION**

This case arises out of foreseeable and preventable child sexual abuse. Plaintiff LA by and through her court appointed conservator, William Hunt, Jr. ("LA"), and Plaintiff Makayla ("Makayla") were subjected to sexual abuse by a male sibling, MA, while under the Department of Health and Human Services, Child and Family Services Division's ("CFSD") neglectful watch. Although it had knowledge of the conditions in LA's and Makayla's home, CFSD failed to appropriately respond to repeated warnings about LA's and Makayla's situation. As a result of being sexually abused by MA and CFSD's failure to prevent the inevitable, LA and Makayla have suffered greatly incurring lifelong physical and mental trauma.

Now that the harm has been done, CFSD raises numerous affirmative defenses in response to LA's and Makayla's claims, including: 1) CFSD did not have a duty to Plaintiffs; if it did have a duty, it is immune from liability; 2) the statute of limitations prevent Plaintiffs' claims; 3) Plaintiffs waived their claims; 4) Plaintiffs' claims are barred by issue or claim preclusion; 5) Plaintiffs failed to mitigate their damages; 6) LA and Makayla were contributorily negligent; and 7) if CFSD is liable for damages, it is protected by the damages cap.

Many of these issues were thoughtfully addressed, *in Plaintiffs' favor*, in Honorable Judge Elizabeth Best's Order Granting Partial Summary Judgment, Cause No. DDV-13-813(b). (SUF 20). For the reasons stated herein and in Judge Best's

Order, CFSD's asserted affirmative defenses are inappropriate, inapplicable, or unconstitutional and should be stricken accordingly.

## STATEMENT OF UNDISPUTED FACTS

Plaintiffs refer this Court to their Statement of Undisputed Facts ("SUF") filed under separate cover. The information germane to this motion is as follows. Plaintiff Kari Anderson ("Kari") and Michael S. Anderson ("Mike") are the birth parents of LA, born 2011. (SUF 1). Kari is the birth mother of Makayla, born 1999. (SUF 2). Mike is the father of MA, born 2003, and JA, born 2006. (SUF 3). Collectively, they may be referred to as the "Anderson family" and/or the "Anderson children."

CFSD became involved with the Anderson family in 2012—with at least eight reports to CFSD between 2012 and 2014. (SUF 11, 12). CFSD employed Jacqui Poe ("Jacqui") as a child protection specialist and Barbara Maddren-Broughten ("Barbara") as a child protection specialist supervisor—both Jacqui and Barbara worked in the Livingston, Montana, office. (SUF 5-9). Jacqui first became involved with the Anderson family in November of 2014. (SUF 13). On January 25, 2015, a report of physical neglect by Kari of the Anderson children was called in and substantiated. (SUF 14). As a result, Jacqui completed a Family Functioning Assessment ("FFA") that was reviewed by Barbara and dated February 21, 2015. (SUF 15). Therein, Jacqui noted the children were unsafe and that the Anderson family was "in crisis (out of control)" and unable to manage their own functioning.

2

(SUF 18-19). Due to the Anderson family being out of control and in-crisis, Kari and Mike entered into a voluntary protective services agreement ("VPSA") with CFSD on or about February 9, 2015. (SUF 20).

Less than two months later, in early March, unnerving and sexually explicit journal entries written by MA were provided to CFSD. (SUF 22). Following this disclosure, on or about April 22, 2015, Kari found more disturbing journal entries and provided the additional entries to Jacqui. (SUF 22). The first reported journal entry contained a sexual narrative about MA and Makayla; the other contained a step-by-step guide on how to rape, chain up, kill, and repeatedly rape a girl or kill her ("rape key"). (SUF 23). Jacqui did not report the rape key to CFSD's Centralized Intake ("CI"); did not show it to Barbara; and it was not addressed by Jacqui or CFSD until a family engagement meeting on April 30, 2015. (SUF 24-26). Although the rape key was allegedly addressed at the family engagement meeting, Jacqui did not bring a copy and it is not mentioned in the meeting notes. (SUF 27).

On May 9, 2015, JA disclosed that MA had forced him, at knife point, to perform oral sex. (SUF 28). Jacqui reported that JA's disclosure was credible. Despite the credible disclosure of rape at knife point and the parents' inability to control their own functioning and home, CFSD made a finding of no present danger. (SUF 29-30). Jacqui completed another FFA that was reviewed by Barbara and dated June 13, 2015. (SUF 31). In the June 2015, FFA, Barbara similarly reported Kari's and Mike's

3

ability to parent was impacted by mental health and functioning issues. (SUF 32). The February 2015 VPSA was extended and included a provision for Kari and Mike to separate and supervise the children. (SUF 34-35). The VPSA, the only plan to keep the children safe, relied on the Anderson parents—which CFSD knew to be unable to provide a safe home for the children.

Despite a plan to rely on the parents to separate and supervise, Jacqui reported in CAPS on June 8, 2015, that LA was found alone with MA in MA's bedroom in the middle of the night.  (SUF 35). Despite CFSD's concerns, it made no change to plan, nor did it remove MA. (SUF 36). On July 3, 2015, LA's counselor called a report into CI stating that LA had disclosed MA had hurt her "hummie" with his swords, while pointing to her genital area—CI classified the report as "information only." (SUF 37-38). Although Jacqui noted LA was not entirely safe in her home, the in-home safety plan remained in place, and CFSD, again, did nothing. (SUF 42). Services for the Anderson family were closed in August of 2015. (SUF 43).

Although a report was called into CI in September of 2015 regarding concerns about MA and JA living together, CFSD closed the case. It did not become involved again until approximately January 1, 2016. (SUF 44-45). On that date, CFSD received another reporting regarding sex abuse and MA—this time he sexually assaulted Makayla. (SUF 45). After MA's arrest, CFSD finally moved for adjudication of the

respective children as youths in need of care and sought temporary legal custody of LA and Makayla in April of 2016. (SUF 46).

CFSD closed its case with respect to Makayla on October 2, 2017, when Makayla reached age 18. CFSD closed its case with respect to LA on May 14, 2018, which ended CFSD's involvement with the Anderson family. (SUF 51-52). As a direct and proximate result of CFSD's actions and omissions, LA and Makayla suffered significant physical and mental harm. (SUF 50-51).

## **LEGAL STANDARD**

Rule 56(a), F.R.Civ.P., provides that a party seeking to recover on a claim may move for summary judgment on claims or defenses, or a specific "part of each claim." A court should grant summary judgment where the movant shows there is no genuine dispute as to material fact and he or she is entitled to judgment as a matter of law. Rule 56(a), F.R.Civ.P. Generally, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

"When the moving party will have the burden of proof on an issue at trial, it must demonstrate that no reasonable trier of fact could find other than for the moving party." *Ybarra v. John Bean Techs. Corp.*, 853 F.Supp.2d 997, 1001 (E.D. Cal. 2012).

Once the initial burden is met by the moving party, "the burden shifts to the opposing party to established that a genuine issue as to any material fact actually exists." *Ybarra*, 853 F.Supp.2d at 1001.

## ARGUMENT

### I.    CFSD had a duty to LA and Makayla.

Plaintiffs' complaints in this matter are centered around CFSD's negligent handling of reports of abuse and neglect of LA and Makayla. (Doc. 100 at 9-10). A negligence action has four elements—duty, breach of duty, causation, and damages. See *Simpkins v. Speck*, 2019 MT 120, ¶ 15, 395 Mont. 509, 443 P.3d 428. CFSD denies it had a duty to protect LA and Makayla from child abuse. (Doc. 61 at 4, ¶¶ 18-20). However, as shown in the record in this matter, CFSD admitted it has duties to protect children who are abused, neglected, or at risk of abuse or neglect. Specifically, CFSD admitted it had duties under Montana statutory law, Montana administrative law, and per its own internal policies (based upon statutory and administrative law).

As demonstrated by the record, CFSD had a duty to ensure the safety of LA and Makayla was its paramount concern. (SUF 56). In doing so, it had to put the safety of LA and Makayla above all other decisions. (SUF 57). To carry out its mission, CFSD admittedly, at a minimum, had the following statutory and administrative duties: to promptly call suspected child abuse or neglect into the child

abuse hotline; and to respond to reports of abuse or neglect. (SUF 60, 64-66). CFSD also admits it had the following duties under its own internal policies: to respond to reports of abuse or neglect; to determine whether or not LA and Makayla were safe according to its definitions of safe and unsafe; to determine whether LA and Makayla had been physically or psychologically harmed *or* at the risk of physical or psychological harm; to determine whether or not there was a condition in the Anderson home creating a present danger, immediate (imminent) danger, or impending danger; to assess whether LA and Makayla's caregivers had protective capacity; to determine whether the conditions in the Anderson home passed the safety threshold; to determine whether it was providing the appropriate level of protective services (i.e. voluntary, emergency, and court-ordered); and to assess whether or not its response was sufficient to maintain the safety of LA and Makayla. (SUF 52, 55-63). Lastly, per CFSD's admission, it is *the* agency tasked with protecting children—like LA and Makayla—which includes the authority to provide protective services or to take temporary or permanent custody of a child when necessary. (SUF 61).

Although CFSD admitted it has duties to children, Plaintiffs anticipate CFSD will argue it did not have these duties to them. However, it is evident a "special relationship" arose between CFSD and LA and Makayla. A "special relationship" gives rise to a special duty that is "more particular than the duty owed to the public

at large." *Kent v. City of Columbia Falls*, 2015 MT 139, ¶ 23, 397 Mont. 190, 350 P.3d 9. One of the four circumstances giving rise to "special relationship" is a relationship created by statute intended to protect a specific class of persons of which the plaintiff is a member. See *Kent*, ¶ 23. See also, *Massee v. Thompson*, 2004 MT 121, ¶¶ 43-44, 321 Mont. 210, 90 P.3d 394 (domestic abuse statutes established a special relationship between abuse victim and sheriff). Similarly, in *Newville v. State, Dept. of Family Services*, 267 Mont. 237, 269-70, 883 P.3d 793, 812 (1994), the Court upheld a negligence claim brought on behalf of an abused child against CFSD—thereby affirming it had a "special relationship" and an ensuing duty to the abused child. *Newville* is binding authority that is directly on point.

There can be no genuine issue of material fact that a special relationship arose between CFSD and LA and Makayla in this matter. CFSD admitted it is the agency responsible for child safety and it has admitted it has statutory, administrative, and internal duties to keep children safe. LA and Makayla are undoubtably within the class of persons the CFSD statutes, administrative rules, and policies are meant to protect. For these reasons, this Court should find there is no genuine issue of material fact with respect to CFSD's duty to LA and Makayla.

II.    **CFSD is not shielded from liability meaning its Fourth through Eighth Affirmative Defenses must be stricken.**

CFSD argues that if it did have a duty to LA and Makayla, it is shielded from liability pursuant to the following: §2-9-103, MCA (Doc. 61 at 9, ¶¶ 5-6); §41-3-203, MCA (Doc. 61 at 10, ¶ 7); the "public duty doctrine" (Doc. 61 at. 9,¶ 4); and quasi-judicial immunity (Doc. 61 at 10, ¶ 8). For the reasons herein, CFSD is not immune from liability and is susceptible to paying damages to Plaintiffs.

A.    **CFSD is not immune from liability under §2-9-103, MCA (Affirmative Defenses Five and Six).**

First, CFSD states it is shielded from liability under §2-9-103, MCA, which provides, in part, that if an "officer, agent, or employee of a governmental entity . . . acts in good faith" under a law that is subsequently declared invalid, it cannot be held civilly liable. This section of the Montana Code Annotated does not apply in this matter as Plaintiffs are not claiming that CFSD or its agents, officers, or employees are liable under a law declared invalid. To the contrary, Plaintiffs claim that CFSD (as an agency)—not its individuals employees, agents, or officers—is liable due to its violation of a number of valid laws, rules, and ordinances. (See SUF 52-65). As this section is not applicable, CFSD cannot use it to claim immunity. This Court should strike CFSD's Fifth and Sixth Affirmative Defenses.

**B.    CFSD is not immune under §41-3-203, MCA (Affirmative Defense Seven).**

Second, CFSD claims it is immune from liability under §41-3-203, MCA. Section 41-2-203 provides: "[a]nyone investigating or reporting any incident of child abuse or neglect under 41-3-201 or 41-3-202 . . . is immune from liability . . . ." The Court in *Newville* addressed this precise issue in Plaintiffs' favor.

Specially, when looking at §41-2-203, MCA, the *Newville* Court found that the immunity granted under this section "is intended to protect individuals such as teachers, doctors, and psychologists who are required to report suspected abuse," not CFSD. *Newville*, 883 P.2d at 812). The *Newville* Court further emphasized CFSD's duty by quoting the public policy of Montana, which is to "provide for the protection of children whose health and welfare are or may be adversely affected and further threatened by the conduct of those responsible for their care and protection." *Newville*, 883 P.2d at 812, quoting §41-3-101(2), MCA. In analyzing §41-2-203, MCA, and CFSD's duties, the *Newville* Court found this statute "does not immunize the Department [CFSD] from tort liability." This Court must follow the *Newville* Court's holding regarding Montana law and strike CFSD's Seventh Affirmative Defense.

10

**C.    CFSD is not immune under the public duty doctrine (Affirmative Defense Four).**

CFSD invokes the public duty doctrine as its Fourth Affirmative Defense.  The public duty doctrine states "a governmental entity cannot be held liable for an individual plaintiff's injury resulting from a government officer's breach of a duty owed to the general public rather than to the individual plaintiff." *Kent*, ¶ 23. By its own terms, the public duty doctrine does not apply when a "special relationship" arises.

As previously discussed, a "special relationship" gives rise to a duty that is "more particular than the duty owed to the public at large." *Kent*, ¶23. Although *Newville* implies child protection statutes give rise to a special relationship, the leading case on this issue is *Mammo v. Arizona*, 138 Ariz. 528, 675 P.2d 1347 (Ariz. App. 1983); see generally *Newville*, 883 P.2d at 812. In *Mammo*, a non-custodial father found bruises on his children and contacted child protective services ("CPS"). An Arizona statute, akin to the Montana statute, required CPS to "immediately" investigate. *Mammo*, 675 P.2d at 1351. Unfortunately, CPS did not take any protective action and one of Mammo's children died from child abuse—resulting in Mammo's wrongful death action. *Mammo*, 675 P.2d at 1349. In defending the action, child and family services claimed its duty was owed to the general public, not to any individual. *Mammo*, 675 P.2d at 1351. The Court disagreed finding that "[the child]

was individually identified to the agency charged with her protection and a relationship emerged between her and the state so that the failure on the part of [the agency] employees to perform their duty worked a special injury to her." *Mammo*, 675 P.2d at 1351. Many other jurisdictions have also held the "public duty doctrine" does not apply when child protection agencies negligently perform in their duties. See e.g. *Turner v. District of Columbia*, 532 A.2d 662, 668, 675 (D.C. 1987) (the court upheld a negligence claim noting that when a child protection agency is negligent in carrying out its duties, such "statutorily protected class suffers in a way uniquely different from the public at large").[1]

The overwhelming body of case law provides that child protection agencies have a "special relationship" to children, and therefore, the public duty doctrine does not bar negligence claims on those children's behalf. As was the case with the child in *Mammo*, LA and Makayla were individually identified to CFSD—the agency charged with their protection—giving rise to a special relationship. Accordingly, this Court should strike CFSD's Fourth Affirmative Defense.

---

[1]
See also, *Rees v. State*, 143 Idaho 10, 137 P.3d 397, 404-05 (2006); *Radke v. County of Freeborn*, 694 N.W.2d 788, 793 (Minn. 2005); *Horridge v. St. Mary's County Dept. of Social Services*, 382 Md. 170, 854 A.2d 1232, 1243-45 (Md. App. 2004); *M. W. v. Dept. o/Social & Health Services*, 149 Wash.2d 589, 70 P.3d 954, 957 (2003); *Alejo v. City of Alhambra*, 15 Cal.App.4th 1180, 89 Cal.Rptr.2d 768 (2000); *Sabia v. State*, 164 Vt. 293, 669 A.2d 1187, 1191-92 (1995); *Jensen v. Anderson County DSS*, 304 S.C. 195, 403 S.E.2d 615 (1991); *Brodie v. Summit Cty. Children Servs. Bd*, 51 Ohio St.3d 112, 554 N.E.2d 1301 (1990); *Owens v. Garfield*, 784 P.2d 1187, 1192 (Utah 1989); *Dept. of Health and Rehab. Servs. v. Yamuni*, 529 So.2d 258, 261-62 (Fla. 1988).

**D.      CFSD does not qualify for quasi-judicial immunity (Affirmative Defense Eight).**

Lastly, CFSD argues it is immune due to quasi-judicial immunity. Judicial immunity may attach where a division is either a statutorily-designated quasi-judicial board or where a division is performing quasi-judicial functions. *Newville*, 883 P.2d at 812; see also §2-15-124, MCA. Montana law defines a quasi-judicial function as "an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies." §2-15-102(10), MCA. Actions considered administrative or ministerial do not qualify as quasi-judicial functions. See *Newville*, 883 P.2d at 810-11. A ministerial act is defined as:

> . . . a duty that has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated; the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion . . . .

*State ex re. Workers' Compensation Division v. District Court,* 246 Mont. 225, 232, 805 P.2d 1272, 1277 (1990) (n/k/a *Great Western Sugars)*. To be entitled to immunity, the division must show it made a "policy decision, consciously balancing risks and advantages. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision . . . ." *Great Western Sugars*, 805 P.2d at 1277. When compared to the "discretionary function exception" to the Federal Tort Claims Act, the United States

13

Supreme Court stated acts subject to immunity "must involve 'permissible exercise of policy discretion.'" *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59 (1988). A quasi-judicial function may include an action such as a division carrying out a contested case hearing or having its decision be subject to judicial review. See *Newville*, 883 P.2d at 810, 812.

In *Newville*, the department of family services (the "Department") argued it was entitled to quasi-judicial immunity. In *Newville*, the Department placed a minor child in a series of foster homes, including the home of the Kuipers. *Newville*, 883 P.2d at 796. Prior to placing the child with the Kuipers, the Department did not follow up on a report in Mr. Kuiper's file regarding issues of rage and other reports of abuse. While with the Kuipers, the child was physically abused. The minor child's guardians filed a negligence action against the Department. *Newville*, 883 P.2d at 796, 798. When presented with the issue of quasi-judicial immunity, the Court utilized the reasoning above and held the following: the Department was required by statute to license, train, and investigate adoptive homes; the Department was not an expressly designated quasi-judicial board; and that there was no contested case hearing involved, nor was there any other adversarial type of proceeding; and that the Department's actions were not discretionary, but mandated by statute and were ministerial and administrative in nature. *Newville*, 883 P.2d at 812.

The present case is analogous in that CFSD was mandated by statute, the administrative rules, and its own internal policies to take certain actions including, but not limited to, calling reports of child abuse into the hotline and promptly investigating reports of child abuse. (See SUF 52-65). While Jacqui's actions may have necessitated some "discretion," her actions were entirely governed by statute, the administrative rules, and CFSD's polices. All of the acts Plaintiffs complain of were ministerial and administrative actions carried out by CFSD and its employees. CFSD was not acting in a quasi-judicial function, nor is it a quasi-judicial board. For these reasons, this Court should strike CFSD's Eighth Affirmative Defense.

### III. Plaintiffs' negligence and negligent infliction of emotional distress claims are not barred by the statute of limitations nor have they waived their claims, meaning CFSD's First and Third Affirmative Defenses must be stricken.

Plaintiffs have alleged CFSD was negligent in its handling of their case. (Doc. 100 at 9-10) (see generally, SUF). They further allege such negligence caused negligent infliction of emotional distress. (Doc. 100 at 11) (see generally, SUF). The statute of limitation for commencement of a negligence action and a negligent infliction of emotional distress action is three years. §27-2-204(1), MCA; see also *Estate of Woody v. Big Horn County*, 2016 MT 180, ¶ 9, 384 Mont. 185, 376 P.3d 127. Typically, "the statute of limitations begins to run upon the occurrence of the last fact essential to the cause of action." See *E.W. v. D.C.H.*, 231 Mont. 481, 484, 754

P.2d 817, 819 (1988) (superceded by statute on other grounds) (citation omitted). Stated another way, the claim begins to accrue when all the elements of claim "exist or have occurred." See *Estate of Woody*, ¶ 9. However, the statute of limitations for negligence claims is tolled on a minor's claim until the minor reaches age 18—meaning a minor has three years to commence an action after his or her 18th birthday. See §27-2-401, MCA; see also *Volk v. New York Life Insurance Co.*, 598 F.Supp.3d 979, 985 (D. Mont.).

The original Complaint and Jury Trial Demand was filed before the Montana Eighth Judicial District Court on December 20, 2019. It was removed to this Court in May of 2020 (Doc. 1; Doc. 1-1). While there are a number of essential facts in this matter, the *last* essential fact, and the last element of this claim to have occurred, giving rise to the running of the statute of limitations for LA and Kari was Judge Gilbert's May 14, 2018, Order Dismissing the State's and CFSD's temporary legal custody of LA, and thereby ending CFSD's involvement with the Anderson family. (SUF 52). For Makayla, the last essential fact for the statute of limitations to start running was Judge Gilbert's October 2, 2017, Order dismissing the State's and CFSD's temporary legal custody of Makayla as she had reached age 18. (SUF 51). As stated, this matter was initially filed on December 20, 2019. Accordingly, Plaintiffs' negligence claims and negligent infliction of emotional distress claims were filed *well* within the applicable statute of limitations.

Lastly, LA does not turn 18 years old until September of 2029. The statutes of limitation for LA's claims are tolled until her 18th birthday.

Additionally, as its Third Affirmative Defense, CFSD alleges Plaintiffs have waived their claims. Plaintiffs have not waived their claims; nor have they signed any releases. CFSD has provided no documentation or evidence throughout these proceedings suggesting otherwise. The Court must strike this defense.

## IV. Plaintiffs' claims are not barred by issue preclusion or claim preclusion, therefore this Court must strike CFSD's Second Affirmative Defense.

As its Second Affirmative Defense, CFSD states Plaintiffs' claims, or some of them, are barred by the doctrines of issue and claim preclusion. Claim preclusion applies when "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267. Issue preclusion "bars the same parties or their privies from relitigating issues in a second suit that is based upon a different cause of action. *Baltrusch*, ¶ 15.

The present matter is the only matter addressing Plaintiffs' claims. There have been no past claims involving these parties nor these issues and there has been no final judgment. Accordingly, the doctrines of issue preclusion and claim preclusion cannot apply. This Affirmative Defense must be stricken.

**V.     Plaintiffs did not fail to mitigate their damages.**

CFSD fails to explain what Plaintiffs should have done differently to mitigate their damages after the horrific sexual abuses occurred in their household. See CFSD's Twelfth Affirmative Defense. CFSD has failed to suggest or mention any mitigation remedy that Plaintiffs should have undertaken, or undertaken sooner. This defense lacks merit and should be stricken.

**VI.    Makayla and LA were not contributorily negligent.**

In its Fourteenth Affirmative Defense, CFSD claims that Plaintiffs' damages were caused by their own negligence. Again, this defense is completely devoid of factual support as it pertains to Plaintiff children. To suggest that these girls, who were at 3 and 15 at the time, are responsible for being molested by an older sibling is both repugnant and factually deficient. As to Makayla and LA this defense should be stricken.

**VII.   The damages limitation provided for in § 2-9-108(1), MCA, does not apply.**

**A.     By its plain language, § 2-9-108(1), MCA, cannot apply (Affirmative Defense Fifteen).**

CFSD's Fifteenth Affirmative Defense asserts that it is not liable for damages in excess of the statutory limits applicable to governmental entities as provided in § 2-9-108. The applicable provision of § 2-9-108(1), MCA, provides: "[t]he state, a county, a municipality, taxing district, or any other political subdivision of the state

is not liable in tort action for damages suffered as a result of an act or omission of an

officer, agent, or employee of that entity in excess of $750,000 for each claim and

$1.5 million for each occurrence." Section 2-9-101(1), MCA, defines "claim" to

mean:

> any claim against a governmental entity, for money damages only, that
> any person is legally entitled to recover as damages because of personal
> injury or property damage caused by a negligent or wrongful act or
> omission committed by any employee of the governmental entity while
> acting within the scope of employment, *under circumstances where the
> governmental entity, if a private person, would be liable to the claimant
> for the damages under the laws of this state* . . . .

[emphasis added]. Thus, the limitations of liability against the State *only* applies

where a private person similarly would be liable.

It is apparent from the definition of "claim" that the claims at issue in this

matter are not claims for which the statute applies. Here, the "claims" against CFSD

are not claims "under circumstances where the governmental entity, if a private

person, would be liable to the claimant for damages . . . ." See § 2-9-101(1), MCA.

Here, the duties owed, the degree of negligence, the wrongful acts, and the omissions

at issue are not duties imposed on private persons under the laws of the state.

In fact, the Montana Supreme Court strictly applied the terms of § 2-9-101(1)

in *Delaney & Co. v. City of Bozeman*, 2009 MT 441, 345 Mont. 181, 222 P.3d 618.

*Delaney* involved a developer's damages claim against the City of Bozeman and its

former city manager for lost profits based on tort claims for constructive fraud,

negligent misrepresentation, and intentional interference with prospective economic advance. The *Delaney* Court used the rules of statutory construction to determine that the $750,000 damage limitation in § 2-9-108(1) did not apply to the tort claims at issue because such claims were not damages claims within the meaning of § 2-9-101(1) and (6), MCA. The court noted that the term "property damage" under § 2-9-101(6) meant "injury or destruction to tangible property." *Delaney*, ¶¶ 23-25. The damage to the property at issue in *Delaney* was not "tangible property" under the statute and the Court declined to apply the damage limitation of § 2-9-108(1). *Delaney*, ¶¶ 23-25. In coming to its decision, the *Delaney* Court noted "[w]e interpret statutes by looking at their plain language" and that "a whole act must be read together and where possible, full affect will be given to all statutes involved." *Delaney*, ¶ 22.

The Court in this case should apply a similar statutory construction analysis to determine the damage limitation does not apply. Application of the plain language rule of statutory construction requires the court to give effect to the limitations of liability against CFSD finding that it only applies where a private person would similarly be liable. See §§ 2-9-108(1) & 2-9-101(1), MCA. Here, a private person has no duty to call in a report of abuse or neglect; to investigate child abuse or neglect; or to provide protective services or to take temporary or permanent custody of a child.

It cannot be disputed that these duties are *specifically* and *inherently* assigned to CFSD under Montana law. (See SUF 52-65).

**B.    The limitation on damages imposed by § 2-9-108(1), MCA, raises constitutional issues.**

**1.    Equal Protection - Article II, Section 4 of the Montana Constitution**

Plaintiff understands the basic principal that courts should interpret statutes narrowly in a manner avoiding unconstitutional preemption. See *City of Great Falls v. Morris*, 2006 MT 93, ¶ 19, 332 Mont. 85, 134 P.3d 692. The interpretation above accomplishes this purpose.

In the 1980s, prior state damage cap provisions were held unconstitutional by the Montana Supreme Court. See *White v. State*, 203 Mont. 363, 661 P.2d 1272 (1983) (striking down former § 2-9-104, MCA); *Pfost v. State*, 219 Mont. 206, 713 P.2d 495 (1985) (striking down former § 2-9-107, MCA). These cases held that the cap denied equal protection to catastrophically-injured victims of torts. *Pfost*, 713 P.2d at 500. Since *White* and *Pfost*, the 1986 Legislature reenacted the damage cap provisions of § 2-9-108(1) by raising the limits from $300,000 to $750,000 per claim, and from $1,000,000 to $1,500,000 per occurrence. Compare § 2-9-108 with § 2-9-107 (repealed). This statute was framed in virtually the same terms as the pre-*Pfost* statute.

Since 1986, the Montana Supreme Court has repeatedly struck down statutes restricting relief to classes of personal injury victims for a lack of a rational basis. See, e.g. *Brewer v. Ski-Lift, Inc.*, 234 Mont. 109, 762 P.2d 226 (1988) (no rational basis exists for limiting remedies of injured skiers, as opposed to victims of other hazardous activities); *Reesor v. Montana State Fund*, 2004 MT 370, 325 Mont. 1, 103 P.3d 1019 (no rational basis exists for paying older victims of injury lower permanent partial disability benefits than similar younger workers); *Schmill v. Liberty Northwest Inc. Corp.*, 2003 MT 80, 315 Mont. 51, 67 P.3d 290 (no rational basis exists for reducing occupational disease victim's benefits, where workers' compensation injury victims incur no similar reduction); *Henry v. State Compensation Fund*, 1999 MT 126, 294 Mont. 449, 982 P.2d 456 (no rational basis exists for denying occupational disease victim's benefits provided to similar workers' compensation injury victims).

Victims of negligence at the hands of a governmental entity should be entitled to the same assessment of damages as those who were wronged by private persons—to reach any other conclusion is in conflict with Montana's Constitution.

## 2. Inviolate right to jury trial - Article II, Section 26 of the Montana Constitution

Both the framers of the 1889 Constitution and the 1972 Constitution utilized the same language to preserve the right to a jury trial. In both Constitutions, the

framers said the right to trial by jury "shall remain inviolate." Section 2-9-108(1)'s limitations on damages invade the province of the jury to assess damages.

When interpreting a constitutional provision, "the intent of the framers of the constitutional provision controls its meaning." *Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 16, 301 Mont. 240, 8 P.3d 778, c.f. *Woirbaye v. Montana Fourth Judicial Dist. Court*, 1998 MT 320, ¶ 15, 292 Mont. 185, 972 P.2d 800 (in assessing the right to a jury trial, the contours of the right should be assessed as it existed at common law); *Chessman v. Hale*, 31 Mont. 577, 79 P. 254, 256 (the plaintiff in *Chessman* had a right to a jury trial on his damages claim for defendant's nuisance, because nuisance claims were tried to juries at common law). Thus, at common law, the function of the jury was to assess damages.

Notably, only three years before the adoption of Montana's 1889 Constitution, including its jury trial right, the United States Supreme Court noted in *Barry v. Edwards*, that "nothing is better settled than that, in cases such as the present, and others for torts where no precise rule of law fixes the recoverable damages, it is the peculiar function of the jury to determine the amount of their verdict." *Barry v. Edwards*, 116 U.S. 550, 565, 6 S.Ct. 501, 509, 29 L.Ed. 729 (1886); see also, *Missouri Pacific R. Co. v. Humes*, 115 U.S. 512, 521, 6 S.Ct. 110, 113, 29 L.Ed. 463 (1885) ("[t]he discretion of the jury in such cases is not controlled by any definite rules.").

As is such, the application of § 2-9-108(1), MCA, clearly evades the province of the jury to assess damages in its verdict. Such a result is in conflict with the Montana Constitution. For these reasons, CFSD's Fifteenth Affirmative Defense cannot apply and must be stricken.

## **CONCLUSION**

In conclusion, Plaintiffs respectfully request this Court issue an order finding they are entitled to partial summary judgment on the following and thereby striking the associated Affirmative Defenses:

1. CFSD had a duty to Plaintiffs and it is not immune from damages (striking Affirmative Defenses Four through Eight)**;**

2. Plaintiffs' claims are not barred by the applicable statute of limitation; Plaintiffs have not waived their claims; Plaintiffs claims are not barred by the doctrines of issue preclusion or claim preclusion; Plaintiffs did not fail to mitigate their damages; and LA and Makayla were not contributorily negligent (striking Affirmative Defenses One through Three and Twelve and Fourteen); and,

3. The limitation on damages imposed by § 2-9-108(1), MCA, is unconstitutional and does not apply (striking Affirmative Defense Fifteen).

DATED this 5th day of May, 2023.

> KOVACICH SNIPES JOHNSON, P.C.
> and
> GUSTAFSON LAW OFFICES
>
> By:___/s/ Shelby B. Stover_____
>         Shelby B. Stover
>         P.O. Box 2325
>         Great Falls, MT  59403
>         Attorneys for Plaintiffs

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count, calculated by WordPerfect X3, is 5,857 words, excluding caption, certificate of service, and certificate of compliance.

DATED this 5th day of May, 2023.

> KOVACICH SNIPES JOHNSON, P.C.
> and
> GUSTAFSON LAW OFFICES
>
> By:    /s/ Shelby B. Stover
>        Shelby B. Stover
>        P.O. Box 2325
>        Great Falls, MT  59403
>        Attorneys for Plaintiffs