IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KARI ANDERSON, MAKAYLA ANDERSON, and L.A., a minor child, by and through her Conservator WILLIAM HUNT, JR.,<br><br>             Plaintiffs,<br><br>vs.<br><br>MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES, et al.,<br><br>             Defendants. | CV 20-77-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Pending before the Court are Plaintiff Kari Anderson, Makayla Anderson, and L.A.'s Motion for Partial Summary Judgment Re: Affirmative Defenses (Doc. 106) and Motion for Partial Summary Judgment Re: Fault and Causation (Doc. 109), and Defendant's Motion for Summary Judgment (Doc. 117). The Court held a hearing on the motions on January 5, 2024. (Doc. 148.) The motions are fully briefed and ripe for the Court's review. (*See* Docs. 107, 110, 118, 128, 132, 133, 135, 136, 139.)

For the following reasons, the Court recommends that Plaintiffs' Motion for Partial Summary Judgment Re: Affirmative Defenses be **GRANTED** in part and **DENIED** in part; Plaintiffs' Motion for Partial Summary Judgment Re: Fault and

Causation be **DENIED**; and Defendant's Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND[1]

The individual Plaintiffs in this case are Kari Anderson ("Kari") and her daughters, Makayla Anderson ("Makayla"), born in 1999, and L.A., born in 2011 (collectively, "Plaintiffs").[2] (Docs. 108 at 2; 129 at 2.) Makayla is Kari's daughter from her first marriage, and L.A. is Kari's daughter from her marriage to Mike Anderson ("Mike"). (Docs. 108 at 2; 129 at 2.) Mike is also the father of M.A., born in 2003, and J.A., born in 2006, both from prior marriages. (Docs. 108 at 2; 129 at 2.)

This action was originally brought by Plaintiffs in Montana Eighth Judicial District Court, Cascade County (DV 19-811), on December 20, 2019, against the Montana Department of Public Health and Human Services, the State of Montana, Jacqui Poe, Jane Does I–V, and John Does VI–X. (Doc. 11.) The Department

---

[1] The factual background is taken from Plaintiffs' Statement of Undisputed Facts (Doc. 108) and the facts in the Department's Statement of Stipulated Facts (Doc. 116) that were not disputed by Plaintiffs' Statement of Disputed Facts (Doc. 129). In responding to Plaintiffs' motions for partial summary judgment, the Department did not file a statement of disputed facts, as required by Local Rule 56.1(b). Therefore, Plaintiffs' Statement of Undisputed Facts is deemed to be undisputed. L.R. 56.1(d).

[2] Because L.A. is a minor child, her interests are represented by her court-appointed conservator, William Hunt, Jr. (Doc. 129 at 2.)

timely removed the action to this Court, invoking federal question jurisdiction

under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

(Doc. 1.)  The sole remaining defendant in this case is the "State of Montana, by

and through the Montana Department of Public Health and Human Services" ("the

Department").  (*See* Doc. 100 at 1–2.)

The Department first became involved with the Anderson family in August

2012, through its Child and Family Services Division.  (Doc. 108 at 2–3.)

Between that time and November 2014, the Department received at least eight

reports regarding the Anderson family.  (*Id.* at 3.)

On January 25, 2015, the Park County Sheriff's Department reported to the

Department, and the Department substantiated, that Kari was physically neglecting

the Anderson children.  (*Id.* at 3–4.)  Jacqui Poe ("Poe"), a child protection

specialist with the Department, completed a Family Functioning Assessment where

she noted that, between Kari and Mike, one or both caregivers were violent, and

one or both caregivers could not control their behavior.  (*Id.* at 5.)  Poe further

noted in the Family Functioning Assessment that the children were unsafe, and that

Kari and Mike did not have impulse control, did not have a history of being

protective, did not use resources to meet basic needs, and did not recognize threats.

(*Id.*)

In February 2015, the Department initiated an in-home safety plan whereby

Kari and Mike agreed to a Voluntary Protective Services Agreement that would allow the children to remain in the home with support from the Department. (*Id.* at 6; 129 at 4.)

On approximately March 27, 2015, Kari provided Poe with journal entries apparently written by Mike's son M.A., discussing M.A.'s desire to have sex with Makayla, his stepsister. (Docs. 108 at 6; 129 at 6.) On approximately April 22, 2015, Kari provided Poe with additional journal entries apparently authored by M.A. (Doc. 108 at 6.) This second round of journal entries included a hand-written guide on how to rape, chain up, and kill women or girls—a so-called "rape key." (Docs. 108 at 6–7; 129 at 5–6.) Poe did not show the rape key to her supervisor or report it to the Department's Centralized Intake. (Doc. 108 at 7.)

During this time, the children were seeing in-home service providers, and Kari, Mike, Makayla, and M.A. were in counseling. (Doc. 129 at 10.) Youth Dynamics was also providing counseling to the children, and the school was involved in supporting the family. (*Id.*) These service providers were in contact with Poe and the Department. (*Id.*) Poe testified that she spoke to the Department's sexual abuse response team and to law enforcement concerning the journal entries. (*Id.* at 14–15.) Poe also testified that she spoke with the school and service providers during this time, and with Kari and Mike regarding their willingness and ability to protect and supervise the children. (*Id.* at 14–16.) Kari

4

was also taking steps to increase her protective capacities as a parent. (*Id.* at 18–19.)

After the discovery of the rape key, Kari and Mike agreed to keep Makayla and L.A. separate from M.A. (Docs. 108 at 8; 129 at 6.) On approximately May 9, 2015, however, Jacqui authored a case note stating Mike's other son J.A. had disclosed that M.A. used a knife to force J.A. to perform oral sex on him. (Doc. 108 at 7.) On approximately May 10, 2015, Poe completed a Present Danger Assessment, finding there was no present danger. (*Id.* at 7–8.)

Following the alleged incident involving M.A. and J.A., Kari left the home and took L.A. and J.A. with her. (Doc. 129 at 19–20.) On approximately June 8, 2015, however, Kari allowed M.A. to spend the night at her residence. (Docs. 108 at 8–9; 129 at 19–20.) Kari did not notify the Department prior to allowing M.A. to have contact with the other children. (Doc. 129 at 19–20.) During M.A.'s stay, L.A. was found in the middle of the night in M.A.'s room. (Doc. 108 at 8–9.)

In a Family Functioning Assessment dated June 13, 2015, the Department found that "[t]he parents have mental health and functioning issues which impact their ability to parent." (*Id.* at 8.) Nevertheless, it was determined that "[t]here are no impending danger safety threats that cross the threshold." (*Id.*)

On approximately July 3, 2015, L.A.'s counselor made a report to the Department's Centralized Intake that L.A. had disclosed being sexual abused by

M.A.  (*Id.* at 9.)  This report to Centralized Intake was categorized as "information only," indicating it did not meet criteria for priority.  (*Id.*)

In August 2015, the Department closed the voluntary services for the Anderson family.  (*Id.* at 10.)  But less than five months later, on approximately January 1, 2016, the Department received a report that Makayla had disclosed that M.A. attempted to sexually assault her.  (*Id.*)  On April 14, 2016, the State of Montana filed petitions in the Sixth Judicial District Court, Park County, seeking (1) authority to provide emergency protective services, (2) adjudication of the respective children as youths in need of care, and (3) temporary legal custody of Makayla and L.A., which the court granted.  (*Id.* at 10–11.)  The court eventually dismissed the cases as to Makayla and L.A. on October 2, 2017, and May 14, 2018, respectively.  (*Id.* at 11.)

In their Second Amended Complaint (Doc. 100), Plaintiffs collectively plead causes of action for negligence (Count 1), negligent infliction of emotional distress (Count 2), as well as a third cause of action for malicious prosecution as to Kari (Count 3).[3]  (*Id.* at 9–12.)  For damages, Plaintiffs allege that the Department, by its acts and omissions, "caused immense emotional trauma and damages upon the Anderson family, including all Plaintiffs."  (*Id.* at 13.)

---

[3] Kari's malicious prosecution claim is not at issue in any of the motions now before the Court.

II.     **JURISDICTION**

When this action was removed from state court, the basis for subject matter jurisdiction was the federal question that arose from Plaintiffs' claim under 42 U.S.C. § 1983.  (*See* Doc. 1 at 2.)  Plaintiffs did not retain their § 1983 claim in their First Amended Complaint, however, and their current Second Amended Complaint contains only state law claims.  (*See* Docs. 59, 100.)  Therefore, the Court must address whether it continues to have subject matter jurisdiction over this action.

Federal district courts have discretion to decline to exercise supplemental jurisdiction over state law claims once all claims with original jurisdiction have been disposed of.  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011).  The court should look at factors such as judicial economy, convenience, fairness, and comity to determine whether the balance of these factors favor retaining the state law claims.  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

Some courts have concluded that, when a plaintiff (1) files an action in federal court based on federal question jurisdiction along with additional state law claims that qualify for supplemental jurisdiction, and subsequently (2) amends the complaint to drop the claim with the federal question, the court should dismiss the remaining state law claims.  *See, e.g.*, *Corrado v. City of Portland*, 2022 WL

225584, at *2 (D. Ore. Jan. 26, 2022); *Gentry v. Bank of N.Y. Mellon*, 2015 U.S.
Dist. LEXIS 75922, at *12–13 (C.D. Cal. June 11, 2015).

Even in situations where the defendant removes the action from state court,
the court has the discretion to remand state law claims back to state court when the
plaintiff drops the federal claim in an amended complaint. *Horne v. Wells Fargo
Bank, N.A.*, 969 F. Supp. 2d 1203, 1209–10 (C.D. Cal. 2013). Nevertheless, "when
a defendant removes a case to federal court based on the presence of a federal
claim, an amendment eliminating the original basis for federal jurisdiction
generally does not defeat jurisdiction." *Rockwell Int'l Corp. v. United States*, 549
U.S. 457, 474 n.6 (2007).

In the present case, balancing the relevant factors of judicial economy,
convenience, fairness, and comity, favors retaining the state law claims. This
action is in federal court because the Department removed the case from state
court; Plaintiffs did not choose this forum. Additionally, the case has been
litigated in federal court for more than four years throughout the COVID
pandemic, requiring several extensions of the Court's scheduling order; attorneys
for both parties have been substituted a number of times; and the Court has
reviewed over 1,000 pages of documents *in camera* to determine whether they
must be disclosed under Montana law. Thus, several years and significant time
and resources have already been expended by the parties and the Court, and the

8

parties need a resolution to this case.  Additionally, neither party moved for dismissal or remand following the removal of the § 1983 action.  Accordingly, the Court concludes it has the discretion to continue to exercise supplemental jurisdiction over Plaintiffs' state law claims, and will do so.

## III.   LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c). Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322–23.

/ / /

9

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. (quoting Fed. R. Civ. P. 56(e)).

"A grant of partial summary judgment is appropriate where genuine disputes of material fact exist for only some claims." *Hernandez v. Marion Cty.*, 2017 WL 6029605, at *2 (D. Ore. Dec. 3, 2017). "In resolving a motion for partial summary adjudication, the court must apply the same standards and criteria used for evaluating full motions for summary judgment." *Churchill v. Trinity Universal Ins. Co.*, 2010 WL 11468358, at *3 (D. Mont. Mar. 2, 2010) (citing *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998)).

In ruling on cross-motions for summary judgment, courts "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

/ / /

/ / /

10

## IV.   DISCUSSION

### A.   The Department's Motion for Summary Judgment

The Department moves for summary judgment on the following grounds: (1) the Department owed no duty to Plaintiffs, or alternatively, it did not breach any duty it owed; (2) Plaintiffs have failed to establish that the Department's conduct was the cause of any damages suffered by L.A.; and (3) the Department is entitled to immunity from liability under Mont. Code Ann § 41-3-203.  (Doc. 118 at 2–3.)

### 1.   Whether the Department Owed a Duty to Plaintiffs

The Department seeks summary judgment as to Plaintiffs' negligence claims in Counts 1 and 2 of the Second Amended Complaint.  The Department argues that Plaintiffs have failed to identify the duty the Department owed Plaintiffs.  (Docs. 118 at 4–6, 10–11; 136 at 2.)  The Department also argues that to the extent it owed a duty to any of the Plaintiffs, there is no evidence that the Department breached that duty.  (Doc. 118 at 6–8.)

In response, Plaintiffs argue the Department owed Makayla and L.A. a number of statutory, administrative, and internal policy-based duties, and breached those duties at various points throughout their case.  (Doc. 128 at 6, 9–11.)  Plaintiffs further incorporate arguments made in support of their own motion for partial summary judgment regarding the existence of a "special relationship" between the Department and Makayla and L.A. that gave rise to a duty "more

11

particular than the duty owed to the public at large." (Doc. 107 at 15–16 (quoting *Kent v. City of Columbia Falls*, 350 P.3d 9, 14 (Mont. 2015)).)

Every claim for negligence requires a showing of four elements: (1) the existence of a legal duty owed to the plaintiff by the defendant; (2) the breach of that duty; (3) causation of harm; and (4) resulting damages. *Kostelecky v. Peas in a Pod LLC*, 518 P.3d 840, 851–52 (Mont. 2022). In determining the duty element in a negligence claim against a public entity, the "public duty doctrine" must be considered. *Massee v. Thompson*, 90 P.3d 394, 403 (Mont. 2004).

Under Montana's public duty doctrine, a governmental entity cannot be held liable for an injury that resulted from a government officer's breach of a duty that was owed only to the general public, not to the individual plaintiff. *Id.* The public duty doctrine does not apply, however, when there is a special relationship between the governmental entity and the plaintiff, giving rise to a special duty that is more particular than the duty owed to the general public. *Nelson*, 195 P.3d at 300 (citing *Nelson v. Driscoll*, 983 P.2d 972, 978 (Mont. 1999)). This special relationship can be established in any of four circumstances:

> (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect a person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.

*Orr v. State*, 106 P.3d 100, 110 (Mont. 2004) (citing *Driscoll*, 983 P.2d at 978).

Once the existence of a special relationship is established, the Montana Supreme Court looks to the question of foreseeability to determine the existence of a duty. *Prindel v. Ravalli Cty.*, 133 P.3d 165, 177 (Mont. 2006); *Driscoll*, 983 P.2d at 982. The relevant inquiry is not whether the specific injury was foreseeable, but whether the defendant reasonably could have foreseen that its conduct could have resulted in injuries to the plaintiff. *Gourneau v. Hamill*, 311 P.3d 760, 763 (Mont. 2013) (citing *Hinkle ex rel. Hinkle v. Shepherd Sch. Dist. No. 37*, 93 P.3d 1239, 1244–45 (Mont. 2004)).

The existence of a special relationship creates a duty upon government entities and officers to specific individuals to perform public duties with reasonable care under the circumstances and avoid reasonably foreseeable risks of harm to those individuals within the scope of that relationship. *See Paull v. Park Cty.*, 218 P.3d 1198, 1205 (Mont. 2009) (special relationship created "duty to exercise ordinary care"); *Eklund v. Trost*, 151 P.3d 870, 880–81 (Mont. 2006) (special relationship created "duty of care"); Massee, 90 P.3d at 406 (special relationship created duty to "use reasonable care"); *LaTray v. City of Havre*, 999 P.2d 1010, 1016 (Mont. 2000) (special relationship created "duty of care"); *Lopez v. Great Falls Pre-Release Servs.*, 986 P.2d 1081, 1086–88 (Mont. 1999) (special relationship created "duty of reasonable care"); *Driscoll*, 983 P.2d at 978, 982

13

(special relationship created "duty to exercise reasonable care"). *See also State ex rel. Mont. Bd. of Med. Examiners v. Mont. 2d Jud. Dist. Ct.*, 2019 WL 6035043, at *7 (Mont. Nov. 12, 2019) (Sandefur, J., dissenting) (discussing common law duty of "reasonable care" arising from special relationship).

The Montana Supreme Court has applied the first basis for finding a special relationship under Montana statute in several instances. In *Massee*, for example, the Broadwater County Sheriff's Department responded to multiple domestic disturbances involving a husband and wife ("Ray" and "Vickie," respectively). The encounters often involved alcohol and Ray's threats of harm to himself or Vickie with a firearm. The tumultuous relationship ended tragically with Ray's commission of a murder-suicide. 90 P.3d at 396–99.

Vickie's children brought a negligence action against the Broadwater County Sheriff and the County, alleging the negligent failure to take appropriate action to prevent the killing of their mother. Following a jury verdict in favor of the plaintiffs, the district court granted the defendants' motion for judgment as a matter of law, and vacated the jury verdict. The district court concluded that the defendants had no actionable duty to protect Vickie. *Id.* at 399.

The Montana Supreme Court reversed on appeal. The court found that a special relationship existed between the Sheriff and Vickie based on Montana's domestic abuse statutes. Those statutes required, among other things, that the

victim of domestic abuse be provided notice of their rights under Montana law, and any gun threatened to be used in a domestic assault be confiscated.  The court found these statutes created a special relationship because they were enacted to protect domestic violence victims, and Vickie was within the statutorily protected class.  *Id.* at 403.  The court, therefore, determined there was "sufficient evidence [for the jury] to conclude under the common law negligence jury instruction that the Sheriff failed to use reasonable care and failed to act as an ordinary prudent sheriff or deputy would act under the circumstances."  *Id.* at 406 (internal quotation marks omitted).

Similarly, in *Eklund*, law enforcement was engaged in a high-speed pursuit of an escapee from a youth detention center in Wheatland County, Montana. When the pursuit entered the town of Harlowton, the escapee lost control of his vehicle, and struck a pedestrian in a parking lot.  The pedestrian brought a negligence action against Wheatland County and the Sheriff.  151 P.3d at 875.

The district court granted summary judgment for the defendants, finding that the County and the Sheriff had no duty to the plaintiff under the public duty doctrine.  *Id.*

On appeal, the Montana Supreme Court found there was a special relationship between the defendants and plaintiff by virtue of Mont. Code Ann. § 61-8-107, governing the operation of police or emergency vehicles.  *Eklund*, 151

15

P.3d at 880.  The statute provided that the driver of a police vehicle may exceed

the speed limit "so long as he does not endanger life or property," and that the

driver of a police vehicle is not relieved "from the duty to drive with due regard for

the safety of all parties."  *Id.* at 879 (quoting Mont. Code Ann. § 61-8-107).  The

court reasoned that a special relationship existed between the parties because the

statute was aimed at protecting potential victims of a high-speed chase, and the

plaintiff belonged to that class of individuals to be protected.  *Id.* at 880.  The court

also concluded that a "reasonably prudent officer would have foreseen" that the

failure to comply with the statute created a risk to the plaintiff.  *Id*. at 881.  Thus,

the court concluded that the undersheriff involved in the pursuit owed the plaintiff

a "duty of care under these circumstances."  *Id.*

Similar to *Massee* and *Eklund*, the Court finds that the Montana child abuse

and neglect statutes created a special relationship between the Department and

Makayla and L.A.  Under these statutes, the Montana legislature has declared that

"[i]t is the policy of the state of Montana to . . . provide for the protection of

children whose health and welfare are or may be adversely affected and further

threatened by the conduct of those responsible for the children's care and

protection."  Mont. Code Ann. § 31-3-101 (1)(a).  The child and neglect statutes

further provide, among other things, for mandatory requirements for reporting

suspected abuse or neglect, *id*. § 41-3-201; for the Department's duty to "promptly

16

conduct a thorough investigation into the circumstances surrounding the allegations of abuse or neglect of a child," *id.* § 41-3-202; and for the Department's obligation to provide protective services, *id.* § 41-3-301.

These statutes are plainly intended to protect a specific class of persons—children whose health and welfare are endangered by abuse and neglect—and Makayla and L.A. were members of that class.  Thus, just as the domestic abuse statutes in Montana provide for a special relationship for victims of domestic abuse, the child abuse and neglect statutes create a special relationship between the Department and abused and neglected children.

As to the question of foreseeability as it relates to a legal duty, given the nature of the Department's ongoing involvement with the family, a reasonable jury could find that it was foreseeable that its acts or omissions could have resulted in injuries to Makayla and L.A.  The Department had determined that the family was in crisis and out of control, and that Kari and Mike lacked the capacity to recognize threats to the children's safety and to act protectively.  The Department did not need to foresee specific injury to the children, only that it reasonably could have foreseen that its failure to comply with its duty could result in injuries to the children.  Therefore, the Court concludes that the Department owed a duty to Makayla and L.A. to act with reasonable care under the circumstances and avoid reasonably foreseeable risks of harm to them.

17

The Department argues, however, that the child and abuse statutes did not impose a duty on the Department under the circumstances of this case.  The Department points out that the stated policy of the state of Montana in enacting the statutes is to "provide for the protection of children whose health and welfare are or may be adversely affected and further threatened by the conduct of *those responsible* for the children's care and protection."  Mont. Code Ann. § 41-3-101 (2015) (emphasis added).  Thus, the Department argues that this statute should be applied narrowly to provide protection only against those responsible for the children's care and protection—in this case, Kari and Mike.  Since those responsible for the child's care does not include another child, the Department argues it did not have the responsibility in this case to protect Makayla and L.A. from another minor, M.A.

The Department's argument misses the mark by a wide margin.  The Andersons were under the Department's supervision precisely because Kari and Mike were deemed unable to provide for the children's protection.  The Department itself found that the Andersons did not have impulse control, did not have a history of being protective, and did not recognize threats.  (Doc. 108 at 5.) The Department also characterized the family as "in crisis (out of control), and unable to "manage their own functioning leading them to be out of control, and having mental health and functioning issues which impacted their ability to parent.

18

(*Id.*)  Thus, it was Mike and Kari's inability to recognize and protect the children from risk of harm that created the need for the Department's protection.

The Court also finds that the question of whether the Department breached its duty is a question of fact for the jury.  Plaintiffs have set forth facts to support the Department's knowledge that Mike and Kari's ability to protect the children was impaired, and that the children were living in an environment where their safety was at risk.  At this stage in the proceedings, the evidence of the Plaintiffs is to be believed, and all justifiable inferences are to be drawn in their favor.  *Liberty Lobby*, 477 U.S. at 255.  Applying that standard here, the Court cannot conclude that no reasonable jury could find that the Department breached its duty to Makayla and L.A.

Regarding Kari's negligence claims in Counts 1 and 2, however, the Court reaches a difference conclusion.  Kari is not a member of the class of persons to be protected by the child and abuse statutes.  The Department argues that it did not otherwise owe any duty to Kari, and Plaintiffs have pointed to no law or evidence in the record supporting an argument to the contrary.  In fact, Plaintiffs ignored this issue in their response brief.  The Court thus finds that Plaintiffs have failed to establish any facts or law to support the imposition of a duty from Department to Kari with respect to her negligence claims.

Therefore, the Court recommends that the Department's motion for partial

summary judgment as to Kari's causes of action for negligence and negligent infliction of emotional distress in Counts 1 and 2 be GRANTED.  As to the existence of a duty owed to Makayla and L.A., the Court recommends that the Department's motion be DENIED.

### 2.     Whether Plaintiffs Have Failed To Satisfy the Element of Causation as to L.A.

The Department also moves for summary judgment on the Plaintiffs' negligence claims on the grounds that the causation element cannot be established. The Department argues that the decision by Kari and Mike to allow M.A. to spend the night in the same home as L.A., without the Department's knowledge or consent, was "an intervening cause" and "the sole cause of why the alleged incident could even occur."  (Doc. 118 at 9–10.)

In response, Plaintiffs argue that the Department is improperly "attempt[ing] to deflect blame by arguing that the Anderson parents, who it did not name or assert cross claims against, are liable."  (Doc. 128 at 15.)  Plaintiffs further contend that even if the Department "is permitted to blame Kari and Mike by asserting a super[s]eding intervening cause argument," Plaintiffs have provided sufficient evidence for a reasonable juror to conclude that the Department's actions caused or contributed to Plaintiffs' injuries."  (*Id.* at 13, 17.)

"A superseding intervening cause is an unforeseeable event that occurs after a defendant's negligent act and will generally serve to cut off a defendant's

liability." *BNSF Ry. Co. v. Asbestos Claims Ct.*, 459 P.3d 857, 877 (Mont. 2020) (quoting *Covey v. Brishka*, 445 P.3d 785, 798 (Mont. 2019)) (internal quotation marks omitted).  When certain actions are foreseeable, however, they "do not break the chain of causation."  *Id.*

A defendant may not introduce non-party conduct for the purpose of diminishing its own responsibility.  *Covey*, 445 P.3d at 798 (citing *Faulconbridge v. State*, 142 P.3d 777, 793 (Mont. 2006)).  But a defendant may introduce non-party conduct to demonstrate that the conduct was a superseding intervening cause of the plaintiff's damages.  *Id.* (citing *Faulconbridge*, 142 P.3d at 793; *Larchick v. Diocese of Great Falls-Billings*, 208 P.3d 836, 850 (Mont. 2009)).

Generally, the issue of foreseeability as to an intervening cause is a question of fact to be resolved at trial.  *Fisher v. Swift Transp. Co.*, 181 P.3d 601, 610 (Mont. 2008).  Summary judgment is appropriate on the issue of superseding and intervening causes, however, "when reasonable minds can reach but one conclusion." *BNSF Ry. Co.*, 459 P.3d at 877 (quoting *Larchick*, 208 P.3d at 849).

Here, there are questions of material fact as to foreseeability.  The Department points to facts supporting its position that the threat posed by M.A. had been alleviated by the parties' agreement to separate M.A. from Makayla and L.A. The Department argues that Mike and Kari's decision to allow unsupervised contact between the children was an unforeseeable event, cutting off any liability it

may have.

As discussed above, however, there are facts in this case to support the Plaintiffs argument that any lapse in judgment by Kari and Mike was entirely foreseeable, given their history with the Department.  Their alleged inability to assess risk and exercise appropriate judgment to protect the children was the reason they were under the Department's supervision.  As determined above, a reasonable jury could find that that the actions of Kari or Mike were foreseeable, and that the Department's omissions were a proximate cause of L.A.'s injuries. This is a question for the jury; summary judgment on the issue of foreseeability and causation is not appropriate.

Therefore, the Court recommends that the Department's motion for summary judgment on the issue of causation be DENIED.

### 3.   Whether the Department Is Entitled to Statutory Immunity

The Department also moves for summary judgment on Counts 1 and 2 on the grounds that it is entitled to immunity under Mont. Code Ann. § 41-3-203(1), which provides:

> Anyone investigating or reporting any incident of child abuse or neglect under 41-3-201 or 41-3-202, [or] participating in resulting judicial proceedings, . . . is immune from any liability, civil or criminal, that might otherwise be incurred or imposed unless the person was grossly negligent or acted in bad faith or with malicious purpose or provided information knowing the information to be false.

Section 41-3-202 prescribes the Department's action upon receipt of a report of abuse or neglect.  The Department argues that, since all of its actions in the Anderson matter were taken in response to reports of child abuse and neglect, it is entitled to immunity under this section unless it can be shown it was grossly negligent.  The Department further argues that gross negligence cannot be found here, since the undisputed facts show that it prepared the necessary reports, coordinated with other professionals involved with the family, and investigated the family and the home over several visits and interviews.  (Doc. 118 at 9.)

In response, Plaintiffs argue that the Montana Supreme Court addressed this issue in *Newville v. Department of Family Services*, 883 P.2d 793 (Mont. 1994), and explicitly held that § 41-3-203 did not immunize the Department from tort liability.  (Doc. 128 at 7–9.)

In *Newville*, a suit was brought against the Department on behalf of a child for severe abuse suffered at the hands of her foster parent.  883 P.2d at 798.  The plaintiffs alleged the Department negligently failed to conduct a proper investigation prior to placing the child in the foster home and in response to an incident that occurred during the child's placement there.  *Id.*  The Department argued that, because § 41-3-203 grants immunity to persons investigating or reporting incidents of child abuse or neglect, the Department was immune from tort liability under that statute.  *Id.* at 810.

The Montana Supreme Court disagreed, and concluded that the statutory immunity granted by § 41-3-203 "is not intended for the Department; rather, it is intended to protect individuals such as teachers, doctors, and psychologists who are required to report suspected abuse." *Id.* at 812.  The court pointed to the State of Montana's policy to provide for the protection of abused and neglected children, and concluded that § 41-3-203 did not immunize the Department from tort liability. *Id.*

In reply, the Department argues that Plaintiffs' reliance on *Newville* is misplaced because the Legislature later amended § 41-3-203 to confirm its application to the Department.  (Doc. 136 at 3–4.)  The Department cites to the court's more recent decision in *Weber v. State*, 352 P.3d 8 (Mont. 2015), where it held, in the Department's words, that "the amended Mont. Code Ann. §[ ]41-3-203" entitled the State to immunity.  (Doc. 136 at 5.)

In *Weber*, the Department removed two children from the care of their mother after a therapist reported that she believed the mother was psychologically abusing the children.  The mother brought suit against the State of Montana, alleging that the Department negligently failed to conduct an adequate investigation of the therapist's report before removing the children from the mother's care.  352 P.3d at 10.

In district court, the State moved for summary judgment on the ground that

it was entitled to immunity under § 41-3-203.  The district court concluded that § 41-3-203 did, in fact, extend to the State.  But the court denied the motion because disputed issues of material facts existed on the question of gross negligence. *Weber*, 352 P.3d at 11–12.

On appeal, the Montana Supreme Court reversed the district court's denial of summary judgment, finding that the mother had failed to establish a genuine issue of material fact to support her claim that the State employees were grossly negligent.  *Id.* at 13.

In so holding, the court did not address its prior decision in *Newville*, noting only that the plaintiff did not appeal the district court's conclusion regarding the applicability § 41-3-203.  Therefore, based on the district court's unchallenged conclusion of law, and the Montana Supreme Court's reversal on the question of gross negligence, the court concluded that "[t]he State is entitled as a matter of law to immunity from Weber's claims under § 41-3-203(1), MCA."  *Weber*, 352 P.3d at 14.

Given the absence of any reference to the Montana Supreme Court's prior decision in *Newville*, it can only be assumed that it was not discussed because the issue was not properly before the court.  As noted, the district court's decision that the immunity statute applied to the facts and circumstances in that case was not appealed.  The only issue properly before the court was whether there were any

disputed issues of material fact as to gross negligence.  Therefore, the court's prior decision in *Newville* was left undisturbed.

The Department argues, however, that the Montana Supreme Court changed its conclusion in *Weber* in response to legislative amendments to the applicable statutes.  In support, the Department provides vague references to amendments to the relevant statutes, merely listing the various years where some amendment was made to at least one of the statutes.  (*See* Doc. 136 at 4.)  The Department then goes on to state that "[t]he version of § 41-3-203, MCA applicable in *Newville*, when defining who was entitled to immunity as 'anyone investigating any incident of child abuse or neglect,' did not expressly refer to §§ 41-3-201 and -202, MCA, and the persons and entities listed in these sections."  (*Id.*)

It is true that words "under 41-3-201 or 41-3-202" were not added into § 41-3-203 until the 1993 version of the Code.  *Compare* Mont. Code Ann. § 41-3-203 (1993), *with* Mont. Code Ann. § 41-3-203 (1991).  And the Montana Supreme Court in *Newville* did not state whether it was using the 1991 or 1993 version of § 41-3-203.  Nevertheless, the court made clear in *Newville* that the version of § 41-3-203 it was considering "provides immunity for persons required to report and investigate child abuse *under the provisions of §§ 41-3-201 and 41-3-202, MCA*." 883 P.2d at 812 (emphasis added).  Therefore, the Department's argument that statutory amendments abrogated *Newville* is unavailing.

26

An additional twist—not addressed by either party—is an unpublished memorandum opinion by the Montana Supreme Court in *R.M.S., Sr. v. Department of Public Health & Human Services*, 2009 WL 1875692 (Mont. June 30, 2009). There, similar to the circumstances in *Weber*, the district court ruled that § 41-3-203 applied to the Department, and the plaintiff apparently did not appeal that conclusion of law.  *R.M.S.*, 2009 WL 1875692 at *2–3.  Unlike in *Weber*, however, the Montana Supreme Court ended its memorandum opinion by noting that the district court had "appropriately interpreted and applied the immunity statute." *R.M.S.*, 2009 WL 1875692 at *4.

This Court has previously sought to reconcile the seemingly inconsistent conclusions of *Newville* and *R.M.S.*  In *Green v. Montana Department of Public Health and Human Services*, 2014 WL 12591835 (D. Mont. June 13, 2014), Judge Christensen emphasized the distinction between the harm alleged in *Newville* and the harm alleged in *R.M.S.  Id.* at *2.  In *Newville,* the Department's alleged negligent investigation resulted in further abuse and/or neglect of a child.  In *R.M.S.*, as in *Weber*, the alleged harm was not further abuse and neglect of the child, but the deprivation of family unity resulting from the Department's negligent removal of the child from the home.  Judge Christensen found, where the alleged harm is related to deprivation rather than further abuse and neglect, the policy underlying the statute is best served by affording the Department statutory

27

immunity. *Id.*

The Court agrees with the reasoning in *Green*. The legislative intent appears clear that a person should not be deterred from "investigating or reporting" child abuse or neglect out of fear of civil liability. So long as a person does not make a report in bad faith, or conduct an investigation in a grossly negligent manner, they can be assured they will be immune from liability. *See* Mont. Code Ann. § 41-3-203(1). But facing liability for "investigating or reporting" an incident in good faith is different than accountability for a failure to investigate or make a report when such action if demanded by the circumstances. The statute provides limited immunity for reporting or taking an action in response to a report; it does not provide immunity for failing to report child abuse or neglect, or failing to respond to such a report. In other words, the statute provides immunity where a person acts as required by the statute. It does not provide immunity where a party fails to act when required to do so. This construction of § 41-3-203 is consistent with the Montana Supreme Court's application of the statute in *Newville*, *Weber*, and *R.M.S.*

Here, the harm alleged is not negligent removal of the type alleged in *R.M.S.* or *Weber*. To the contrary, Plaintiffs' tort claims are in large part based on the failure of the Department to remove the children from the parents' care. Plaintiffs allege that the Department failed to act as required by law, and its negligent acts

28

and omissions caused Makayla and L.A. to suffer neglect and abuse, akin to the circumstances in *Newville*.  Accordingly, the Department is not entitled to immunity under § 41-3-203 in this action.

Therefore, this Court recommends that the Department's motion for summary judgment on those grounds be DENIED.

### B.    Plaintiffs' Motion for Partial Summary Judgment Regarding Affirmative Defenses

Plaintiffs move for partial summary judgment with respect to the following affirmative defenses asserted by the Department: (1) the Department owed a duty to Plaintiffs and it is not immune from liability; (2) the Department is shielded from liability by Mont. Code Ann. § 2-9-103; (3) the Department is shielded from liability by Mont. Code Ann. § 41-3-203; (4) the Department is immune under the public duty doctrine; (5) the Department is entitled to quasi-judicial immunity; (6) Plaintiffs' claims for negligence and negligent infliction of emotional distress are barred by the statute of limitations; (7) Plaintiffs have waived their claims; (8) Plaintiffs' claims are barred by issue preclusion or claim preclusion; (9) Plaintiffs have failed to mitigate their damages; (10) Plaintiffs were contributorily negligent; and (11) Mont. Code Ann. § 2-9-108(1) applies to limit the damages Plaintiffs may recover.  (Doc. 106 at 2.)

The Department does not oppose summary judgment as to the Department's immunity under Mont. Code Ann. § 2-9-103 (Doc. 132 at 9); the Department's

immunity under the public duty doctrine (*id.*); and whether the claims are barred by issue preclusion or claim preclusion (*id.* at 16).  The Court will, therefore, recommend that summary judgment be granted with respect to those affirmative defenses.  Each of the remaining defenses will be discussed below in turn.[4]

### 1.    Whether the Department Owed a Duty to Makayla and L.A.

In contrast to the other issues presented in Plaintiffs' motion, the issue of whether the Department owed a legal duty does not appear to be tied to any particular affirmative defense pled by the Department.  Nevertheless, Plaintiffs seek partial summary judgment on the issue of the Department's duty, and argue that a special relationship existed between Makayla and L.A., giving rise to a duty that is "more particular than the duty owed to the public at large."  (Doc. 107 at

---

[4] The Court notes that the Department did not file an answer to Plaintiffs' Second Amended Complaint.  Plaintiffs raised this issue during oral argument.  "A defendant is not required to file a new answer to an amended complaint when the allegations in the amended complaint do not change the theory or scope of the case."  *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 715 (9th Cir. 2020).  When "[t]he Second Amended Complaint contain[s] the same material allegations" with respect to a claim as those contained in the First Amended Complaint, the defendant does "not waive its affirmative defenses to that claim by not filing an answer to the Second Amended Complaint."  *Id.* 715–16.

Here, the Second Amended Complaint merely substituted William Hunt, Jr., as the Conservator for L.A., in place of Kari Anderson on behalf of her minor child, L.A. (*See* Doc. 98.)  Except for this substitution, the allegations contained in the Second Amended Complaint are entirely identical to those in the First Amended Complaint.  (*Compare* Doc. 100 *with* Doc. 59.)

15–16 (quoting *Kent*, 350 P.3d at 14).)  In response, the Department reasserts its argument that its role is in protecting children from the conduct of persons responsible for the children's care and protection, not from the conduct of other children.  (Doc. 132 at 8.)

As discussed above regarding the Department's motion for summary judgment, the Court concludes there was a special relationship between the Department and Makayla and L.A.  The Department owed them a duty to act with reasonable care under the circumstances and avoid reasonably foreseeable risks of harm to the two of them within the scope of their special relationship.

Separate from this common law duty of reasonable care, however, Plaintiffs argue that the Department owed them several "statutory and administrative duties" as well as a number of "duties under its own internal policies."  (Doc. 107 at 14–15.)  It is unclear whether Plaintiffs are asserting that the Department was negligent per se, whereby "a person's breach of duty is established as a matter of law, generally through a statutory violation."  *Wenger v. State Farm Mut. Auto. Ins. Co.*, 483 P.3d 480, 485 (Mont. 2021).  But Plaintiffs have not alleged a claim for negligence per se in their pleadings, nor have they argued for application of a negligence per se theory in their present motion.  Therefore, to the extent plaintiffs seek summary judgment that breach of any of the alleged statutory or administrative "duties" constituted negligence per se, the motion should be denied.

Nevertheless, even if violation of these various statutes and regulations do not constitute negligence per se, any such violation may be considered as evidence of negligence. This is a determination to be made based on the evidence presented at trial. *See, e.g.*, *Prindel*, 133 P.3d at 175–76 (finding plaintiff failed to allege elements of an action for negligence per se, but violation of statute may nonetheless be considered as evidence of negligence).

Accordingly, having concluded that the Department owed a common law duty to Makayla and L.A. to act with reasonable care under the circumstances and avoid reasonably foreseeable risks of harm to them, the Court recommends that partial summary judgment on this issue be GRANTED. To the extent Plaintiffs' seek summary judgment that the Department's breach of any statutory or regulatory duty constitutes negligence per se, it should be DENIED.

### 2.     Whether Mont. Code Ann. § 41-3-203 Is Applicable To Shield the Department from Liability

In its Seventh Affirmative Defense, the Department asserted that it is "immune from liability under Mont. Code Ann. § 41-3-203." (Doc. 61 at 10.)

Plaintiffs argue that the Montana Supreme Court in *Newville* addressed the application of this statute to the Department, and found that the statute protected "individuals such as teachers, doctors, and psychologists who are required to report suspected abuse," but did not immunize the Department from tort liability. (Doc. 107 at 18 (quoting *Newville*, 883 P.2d at 812).) Just as it did in support of its own

32

motion for summary judgment, the Department argues that the Montana Supreme Court applied an amended § 41-3-203 to reach a different conclusion in *Weber*. (Doc. 132 at 11.)

As discussed above in addressing the Department's motion for summary judgment, this Court in *Green* previously distinguished the types of harm that may be alleged against the Department, and concluded that claims of abuse and neglect resulting from the alleged failure to investigate were not entitled to statutory immunity under § 41-3-203.  Accordingly, because "§ 41-3-203, MCA, does not immunize the Department from tort liability" in such cases, *see Newville*, 883 P.2d at 812, there is no genuine dispute as to any material fact regarding whether the Department has immunity under this statute, and Plaintiffs are entitled to judgment as a matter of law on this issue.

Therefore, the Court recommends that Plaintiffs' motion for partial summary judgment as to the Department's Seventh Affirmative Defense be GRANTED.

### 3.    Whether Quasi-Judicial Immunity Is Applicable to Shield the Department from Liability

In its Eighth Affirmative Defense, the Department asserts that "Plaintiffs cannot obtain relief for their claims, or some of them, because of quasi-judicial immunity."  (Doc. 61 at 10.)

Plaintiffs argue that quasi-judicial immunity does not apply here because the actions pertinent to Plaintiffs' claims were ministerial and administrative in nature,

rather than discretionary, and "actions considered administrative or ministerial do not qualify as quasi-judicial functions." (Doc. 107 at 21, 23.)  In response, the Department argues that "the decision as to whether or not to remove a child from a family home is discretionary." (Doc. 132 at 14.)

"Government agencies and officers are immune from tort liability when they commit torts while performing quasi-judicial functions." *Eklund*, 151 P.3d at 876. In order for quasi-judicial immunity to apply, the government function must be quasi-judicial, rather than administrative or ministerial. *State ex rel. Div. of Workers' Comp. v. Dist. Ct.*, 805 P.2d 1272, 1275 (Mont. 1990).  The "primary difference" between quasi-judicial functions and administrative or ministerial functions, is that the former "involve the exercise of the actor's discretion," whereas the latter do not. *Eklund*, 151 P.3d at 876.

In *Eklund*, for example, the Montana Supreme Court concluded that a probation officer's completion of a face sheet containing a juvenile probationer's personal information was a discretionary, quasi-judicial act.  151 P.3d at 878.  As discussed above, *Eklund* involved a pedestrian who was injured by an escapee from a youth detention facility.  In addition to an action against Wheatland County and the Sheriff, the injured party also brought suit against the probation officer who omitted information from the juvenile's face sheet that would have aided law enforcement in apprehending him.  *Id.* at 876.

34

The district court granted summary judgment to the probation officer on the basis of quasi-judicial immunity, and the Montana Supreme Court affirmed.  *Id.* at 878.  The court reasoned the defendant "made a discretionary call, in her capacity as a probation officer for the Youth Court," and noted that there were no "statutes or rules which required that the relevant act be completed in a specific manner." *Id.* at 877–78.

In contrast, in *Newville*, the Montana Supreme Court determined that quasi-judicial immunity did not apply to the Department's actions.  In *Newville*, an action was brought against the Department based on its alleged failure to conduct a proper investigation in placing a child in a foster home.  The Department asserted that its acts in approving the foster care placement were discretionary, quasi-judicial functions, and it was therefore entitled to quasi-judicial immunity.  *Newville*, 883 P.2d at 809–10.  The Montana Supreme Court disagreed, and found "the Department was not acting in a quasi-judicial role." *Id.* at 812.  The Court pointed out "[t]here was no contested case hearing involved, nor was there any other adversarial type of proceeding," and "the Department's actions were not discretionary, but were mandated by statute and were ministerial and administrative in nature." *Id.*

Plaintiffs argue the present case is analogous to *Newville* in that "[a]ll of the acts Plaintiffs complain of were ministerial and administrative actions."  (Doc. 107

35

at 23.)  Thus, Plaintiffs contend that *Newville* controls, and the Department does not have quasi-judicial immunity as to the claims in this action.

But the *Newville* court did not hold that the Department is never entitled to quasi-judicial immunity.  The court relied on the specific language of the statutes at issue to reach its conclusion in that case.  Those statutes provided that "[t]he department *shall* . . . exercise licensing authority over all youth foster homes, . . . [and] provide for training of program personnel delivering services."  Mont. Code Ann. § 41-3-1103(b), (d) (1993) (emphasis added).  The other pertinent statute in *Newville* similarly mandated that "[u]pon receipt of a report . . . the social worker *shall* promptly conduct a thorough investigation."  Mont. Code Ann. § 31-3-202(1) (emphasis added).  Accordingly, the court concluded that "[t]he Department [was] required by statute to license and train foster care providers and to investigate adoptive homes"  and therefore, "at all times leading up to the tort sued upon in this case, was acting ministerially."  *Newville*, 883 P.2d at 812.

In the Plaintiffs' current motion, they do not specify which of the acts complained of were non-discretionary, ministerial acts.  Instead, Plaintiffs argue that "all of the acts Plaintiffs complain of were ministerial and administrative actions."  (Doc. 107 at 23.)  But an examination of the relevant statutes demonstrates that is not the case.  For example, one of Plaintiffs' central allegations is that the Department acted negligently in not removing Makayla or

L.A. from the home environment sooner to protect them from their parents' neglect and absence of protective capacity.  (*See* Doc. 128 at 12.)  The relevant statute provides: "Any child protective social worker of the department, . . . who has reason to believe any child is in immediate or apparent danger of harm *may* immediately remove the child and place the child in a protective facility."  Mont. Code Ann. § 41-3-301(1) (2015).  In contrast to the statutes in *Newville*, the Department is not directed that it *shall* remove the child.  Rather than "require[ing] that the relevant act be completed in a specific manner," *Eklund*, 151 P.3d at 877–78, this decision is left to the child protection specialist's discretion.

The deliberate use of discretionary language is confirmed when compared with other language in the same paragraph of the statute, where it is mandated that if the child protection specialist does remove the child, "[t]he person or agency placing the child *shall* notify the parents, parent, guardian, or other person having physical or legal custody of the child of the placement at the time the placement is made or as soon after placement as possible."  Mont. Code Ann. § 41-3-301(1) (emphasis added).

Therefore, contrary to the Plaintiffs' argument, all of the acts and omissions complained of may not be ministerial in nature, and quasi-judicial immunity may apply to some of Plaintiffs' claims.  Nevertheless, the discretionary language of the statute does not lead to the opposite conclusion that the Department is entitled to

37

quasi-judicial immunity.  It must still be determined, for example, whether the discretion afforded by the statutes was, in fact, exercised.  *See, e.g.*, *Div. of Workers' Comp.*, 805 P.2d at 1277 (finding quasi-judicial immunity did not apply because the Division failed to conduct a mandated review and never exercised the discretion afforded by the  statute).

Accordingly, Plaintiffs have failed to establish that all of the Department's acts and omissions complained of were ministerial in nature.  The Court thus recommends that Plaintiffs' motion for partial summary judgment regarding the Department's Eighth Affirmative Defense be DENIED.

### 4. Whether Plaintiffs' Claims for Negligence and Negligent Infliction of Emotional Distress Are Barred by the Statute of Limitations

In its First Affirmative Defense, the Department asserted that "Plaintiffs' claims, or some of them, are barred by the applicable statute of limitations."  (Doc. 61 at 9.)

Plaintiffs move for summary judgment on this defense, and argue that their negligence and negligent infliction of emotional distress claims were all filed within the applicable three-year statute of limitations, even without considering minority tolling for Makayla and L.A.'s claims.  (Doc. 107 at 23–24.)

In response, the Department apparently concedes that Makayla and L.A.'s claims are not barred.  But the Department asserts that the statute of limitations

period applies to Kari's claims for negligence and negligent infliction of emotional

distress, and argues "[t]here is a dispute between the parties as to when the

applicable statute of limitations began to run."[5]  (Doc. 132 at 15.)

"[T]he period prescribed for the commencement of an action upon a liability

not founded upon an instrument in writing is within 3 years."  Mont. Code Ann. §

27-2-204.  "[T]he period of limitation begins when the claim or cause of action

accrues"—i.e., "when all elements of the claim or cause exist or have occurred."

Mont. Code Ann. 27-2-102(1)(a), (2).

Here, Plaintiffs assert that the last element of Kari's claims occurred on May

14, 2018, with the dismissal of the Department's temporary legal custody of L.A.

(Doc. 107 at 24.)  Since Plaintiffs' action was first filed in state court on December

20, 2019, Plaintiffs assert Kari's negligence claims were filed within the 3-year

statute of limitations period.

Plaintiffs fail to explain, however, what element of Kari's claims finally

occurred on that date, and why they did not accrue earlier.  It is not clear from

Plaintiffs' undisputed facts, for example, why Kari's claims did not accrue, and the

statute of limitations begin to run, upon the Department's alleged failure to act to

---

[5] The Court has already recommended that the Department's motion for summary judgment as to Kari's negligence and negligent infliction of emotional distress claims be granted.  If that recommendation is adopted, the question whether Kari's negligence claims are barred by the statute of limitations is moot.

protect Kari's children in 2015, or any number of events alleged between 2015 and 2018.

A statute of limitations defense is an affirmative defense for which the Department will have the burden of proof at trial. *Marias Healthcare Servs., Inc. v. Turenne*, 28 P.3d 491, 494 (Mont. 2001). Nevertheless, as the moving party, Plaintiffs have "the initial burden of production and the ultimate burden of persuasion" on their motion for summary judgment. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To sustain its burden of production, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id*. In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. *Id*.

Here, Plaintiffs have not sustained their initial burden of production, nor their burden of persuasion on the issue of statute of limitations regarding Kari's claims. Plaintiffs have not established the absence of any issue of material fact as to the date of accrual of her negligence claims, and the motion should be denied as to Kari's claims.

As to Makayla and L.A.'s claims, however, the Court finds there are no

genuine issues of material fact regarding whether those claims for negligence and negligent infliction of emotional distress are barred by the applicable statute of limitations, and Plaintiffs are entitled to judgment as a matter of law on that defense.

Therefore, the Court recommends that Plaintiffs' motion for partial summary judgment, dismissing the Department's First Affirmative Defense, be GRANTED as to Makayla and L.A.'s claims, and DENIED as to Kari's claims.

### 5.   Whether Plaintiffs Have Waived Their Claims

In its Third Affirmative Defense, the Department asserted that "Plaintiffs' claims, or some of them, are barred by the doctrine of waiver."  (Doc. 61 at 9.)

Plaintiffs argue they have not waived any claims, and that the Department has not provided any evidence suggesting otherwise.  (Doc. 107 at 25.)  The Department does not address this issue in its response brief, and confirmed at oral argument that it was not asserting this affirmative defense.

Accordingly, the Court recommends that Plaintiffs' motion for partial summary judgment regarding the Department's Third Affirmative Defense be GRANTED.

### 6.   Whether Plaintiffs Failed To Mitigate Their Damages

In its Twelfth Affirmative Defense, the Department asserted that "Plaintiffs failed to mitigate their damages."  (Doc. 61 at 10.)

Plaintiffs argue that the Department have not elaborated on the manner in which Plaintiffs failed to mitigate their damages.  (Doc. 107 at 26.)  In response, the Department argues that "the issue of mitigation of damages in this case is a jury question and cannot be dismissed at this stage."  (Doc. 132 at 16–17.)  The Court agrees.

"Mitigation of damages is an affirmative defense for which the burden of proof falls on the party opposing the damages."  *Billings Clinic v. Peat Marwick Main & Co.*, 797 P.2d 899, 912 (Mont. 1990).  It is generally a question of fact for the jury.  *Id*.

This issue was minimally briefed by Plaintiffs, and they have not presented any facts—in their Statement of Undisputed Facts, or otherwise—on this issue. Again, Plaintiffs have not sustained their initial burden of production or their burden of persuasion on the issue of mitigation of damages.  Their motion for summary judgment should, therefore, be denied.

Accordingly, the Court recommends that Plaintiffs' motion for partial summary judgment regarding the Department's Twelfth Affirmative Defense be DENIED.

### 7. Whether Makayla and L.A. Were Contributorily Negligent

In its Fourteenth Affirmative Defense, the Department asserted that "Plaintiffs' damages, if any, were caused by their own negligence or fault such that

their recovery should be denied altogether or diminished in proportion with their fault or negligence."  (Doc. 61 at 10.)

Plaintiffs frame this affirmative defense as an argument that the children were responsible for their own alleged abuse, which Plaintiffs characterize as "repugnant" and lacking factual support.  (Doc. 107 at 26.)  In response, the Department concedes that this defense is not directed at L.A., but argues that it "remain[s] unclear what Makayla's claim is" and that the Department "must wait until the time of trial to fully understand . . . whether or not the defense of contributory of comparative negligence is applicable."  (Doc. 132 at 17.)

The Court, again, finds that Plaintiffs have failed to sustain their burden or production or persuasion.  The facts and circumstances surrounding Makayla's claims are unclear.  Plaintiffs' Statement of Undisputed Facts only states that "CFSD became involved again on or about January 1, 2016 when CFSD received a report that Makayla disclosed M.A. had tried sexually assaulting her."  (Doc. 108 at 10.  No other facts are provided, and the Court cannot simply speculate on the facts and circumstances surrounding her claim.  Therefore, Plaintiffs have failed to sustain their burden of production, and have failed to persuade the Court that there are no genuine issues of material fact as to Makayla's potential comparative negligence.

Accordingly, the Court recommends that Plaintiffs' motion for partial

summary judgment regarding the Department's Fourteenth Affirmative Defense be

GRANTED as to L.A., and DENIED as to Makayla.

### 8.     Whether Mont. Code Ann. § 2-9-108(1) Is Applicable To Limit the Damages Plaintiffs May Recover

In its Fifteenth Affirmative Defense, the Department asserted that

"Defendants are not liable for damages exceeding $750,000 per claim or $1.5

million per occurrence." (Doc. 61 at 10.)  This affirmative defense refers to a

Montana statute providing that the state and its political subdivisions are not liable

for an act or omission of its officer, agent, or employee for damages in excess of

$750,000 for each claim and $1.5 million for each occurrence.  Mont. Code Ann. §

2-9-108(1).  Plaintiffs argue that the statute is not applicable here, and violates the

Montana Constitution.  (Doc. 107 at 27.)

"In order for a case to be justiciable under Article III of the Constitution, it

must be ripe for review." *Aydin Corp. v. Union India*, 940 F.2d 527, 528 (9th Cir.

1991).  "A claim is not ripe if it involves 'contingent future events that may not

occur as anticipated, or indeed may not occur at all.'" *United States v. Streich*, 560

F.3d 926, 931 (9th Cir. 2009) (quoting *Thomas v. Union Carbide Agric. Prods.

Co.*, 473 U.S. 568, 580 (1985)).  But a litigant is not required to "await the

consummation of threatened injury"; if the injury is "*certainly* impending," the

claim is ripe. *Id.*

Here, there are a several events that must occur before the damages cap is at

issue. This case has not gone to trial; a jury has not determined that the

Department was negligent; and a jury has not awarded damages in excess of

$750,000 for any claim. Therefore, the issue of whether the damages cap applies

or is constitution is not "certainly pending," and is not ripe. *See, e.g.*, *Osborne v.*

*Billings Clinic*, 2015 WL 13466113, at *1 (D. Mont. Dec. 16, 2015) (issue of the

constitutionality of Montana's medical malpractice damages cap not ripe); *Hodges*

*v. United States*, 2022 WL 73962, at *2 (D. Mont. Jan. 6, 2022) (same).

Therefore, the Court recommends that Plaintiffs' motion for partial summary

judgment regarding the Department's Fifteenth Affirmative Defense be DENIED,

without prejudice.

### C.   Plaintiffs' Motion for Partial Summary Judgment Regarding Fault and Causation

Plaintiffs have filed a second motion for partial summary judgment, seeking

to prohibit the Department "from blaming non-parties or the Anderson parents in

this matter" for any damages suffered by Makayla and L.A. (Doc. 109 at 2.)

Plaintiffs state that granting their motion would effectively strike the Department's

Ninth Affirmative Defense, which states in full: "Plaintiffs' damages, if any, were

caused by the intervening or superseding acts of others." (*See* Doc. 61 at 10.)

Plaintiffs argue, as they do in response to the Department's motion for

summary judgment, that the Department cannot attribute fault to persons it failed

to join as third parties. Plaintiffs assert the Department was required to name Kari

45

as a third-party defendant, pursuant to Mont. Code Ann. § 27-1-703, to raise the issue of whether her conduct was the cause of Makayla or L.A.'s injuries. (Doc. 110 at 7–8.) Alternatively, Plaintiffs argue that (1) any conduct the Department contends cuts off its liability—including the conduct of Kari and Mike—was foreseeable, and thus, cannot constitute a superseding intervening cause; (2) any conduct the Department alleges was a superseding intervening cause occurred contemporaneously with the Department's own negligence and therefore could not constitute such; and (3) the Department failed to sufficiently plead this affirmative defense to give fair notice to Plaintiffs. (Docs. 110 at 11–12; 135 at 7–8.)

In response, the Department clarifies that Kari is the only person whose negligence the Department has asserted was a cause of Makayla's and L.A.'s injuries. The Department argues that Kari is a party to the action, and does not need to be named as a third party for purposes of apportionment. The Department also argues that ample evidence exists that Kari's negligence was the sole, primary, or superseding intervening cause of Makayla's and L.A.'s injuries. (Doc. 133 at 3–5.)

First, the Court disagrees with Plaintiffs' argument that Kari's conduct cannot be considered because she was not named by the Department as a third-party defendant. The apportionment of negligence between multiple parties is controlled by Mont. Code Ann. § 27-1-703(4), which provides that "[f]or purposes

46

of determining the percentage of liability attributable to each party whose action contributed to the injury complained of, the trier of fact shall consider the negligence of the claimant, injured person, defendants, and third-party defendants. . . . The trier of fact shall apportion the percentage of negligence of all persons listed in this subsection."

Kari is a plaintiff in this action, asserting claims under each of the three counts of the Plaintiffs' Amended Complaint.  (Doc. 59.)  Therefore, she is a "claimant," and one of the persons expressly listed in subsection (4) to be considered by the trier of fact for purposes of apportionment.  By the plain terms of the statute, the trier of fact can consider Kari's negligence in determining the percentage of negligence attributable to each party.

Plaintiffs erroneously rely on the provisions of § 27-1-703(6) for the proposition that Kari must also be named as a third party in order the jury to compare Kari's fault.  That subsection addresses the consideration of fault of individuals who are not parties to the case, primarily those who have been released from liability by the claimant.  That is not the case here; that subsection has no application to the consideration of Kari's negligence, as a party to the case. Therefore, to the extent the Department seeks to apportion fault to Kari, it does not run afoul of § 27-1-703.

The issue of apportionment aside, a defendant may also introduce non-party

conduct to demonstrate that the conduct was a superseding intervening cause of the plaintiff's damages. *Covey*, 445 P.3d at 798 (citing *Faulconbridge*, 142 P.3d at 793; *Larchick*, 208 P.3d at 850). Therefore, the Department may introduce both party and non-party conduct to demonstrate that such conduct was a superseding intervening cause of Plaintiffs' damages. The key question is whether there was an unforeseeable event that occurred after the Department's allegedly negligent acts, regardless of whether the event was caused by a party or a non-party. *See Heckaman v. N. Pac. Ry.*, 20 P.2d 258, 263 (Mont. 1933). As to this question, Plaintiffs have not established the absence of any issue of material fact that Kari or Mike's conduct was foreseeable such that it could not constitute a superseding intervening cause. As discussed above, the issue whether Kari and Mike's conduct was foreseeable is a question of fact for the jury.

Next, the Court disagrees that the undisputed facts show that any conduct the Department alleges as a superseding intervening cause of Makayla's and L.A.'s injuries occurred contemporaneously with the Department's own negligence. Plaintiffs have alleged that the Department was negligent at various times throughout the period the Andersons were under supervision. Whether the Department's negligence, if any, occurred contemporaneously with any intervening cause, depends on which act or omission is found to have been negligent and when it occurred. The facts in Plaintiffs' Statement of Undisputed

Facts do not preclude a jury finding that (A) all decisions made by the Department constituting negligence preceded (B) all conduct on the part of the parents that caused L.A.'s injuries—in particular, their decision to allow M.A. to spend the night at Kari's residence.  Therefore, Plaintiffs have failed to sustain their burden of production and persuasion.  It will be up to the jury to determine who was negligent, when that negligence occurred, and whether it was the cause of another party's injury.

Finally, although the Department did not address Plaintiffs' arguments related to notice pleading in its briefing, the Court does not agree that the Department failed to sufficiently plead its Ninth Affirmative Defense to give fair notice to Plaintiffs. As for pleading affirmative defenses, "[t]he key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff fair notice of the defense." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (quoting *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)).  In this context, "[f]air notice generally requires a statement of the nature of the defense, but it does not require a detailed statement of facts." *Wells v. BNSF Ry. Co.*, 2023 WL 5097872, at *12 (D. Mont. Aug. 9, 2023) (citing *Conley v. Gibson*, 355 U.S. 41, 43 (1957)).  "What constitutes fair notice . . . depends on the nature of the defense being asserted.  For well-established defenses, merely naming them may be sufficient, but for others, a party may need to allege additional factual

matter to provide fair notice." *MyGo, LLC v. Mission Beach Indus., LLC*, 2017 WL 107346, at *6 (S.D. Cal. Jan. 11, 2017) (quoting *DC Labs Inc. v. Celebrity Signatures Int'l, Inc.*, 2013 WL 4026366, at *4 (S.D. Cal. Aug. 6, 2013)).

Thus, the Department was not required to give a detailed statement of facts to support its affirmative defense.  In addition, Plaintiffs did not move to strike the defense on the basis that it was insufficient to provide fair notice.  *See* Fed. R. Civ. P. 12(f).

Further, at oral argument, the Department pointed out that it put Plaintiffs on further notice in May 2022 when it responded to Plaintiffs' discovery requests contending that Kari and Mike "are responsible for Plaintiffs' injuries."  (*See* Def.'s Resp. to Pls.' 1st Discovery Requests at 9, 11.)  The Court finds in this context and under the facts of this case, Plaintiffs had fair notice of the basis for the Department's superseding intervening cause defense.

Accordingly, the Court recommends that Plaintiffs' motion for partial summary judgment regarding fault and causation be DENIED.

## V.    CONCLUSION

Based on the foregoing, IT IS RECOMMENDED as follows:

1.    The Department's Motion for Summary Judgement (Doc. 117) should be **GRANTED** in part as to Kari's claims for negligence and negligent infliction of emotional distress, and **DENIED** in all other respects;

2.     Plaintiffs' Motion for Partial Summary Judgment Re: Affirmative Defenses (Doc. 106) should be **GRANTED** as to the Department's Second, Third, Fourth, Fifth, Sixth, and Seventh Affirmative Defenses, the Department's First Affirmative Defense as to Makayla and L.A.'s claims, the Department's Fourteenth Affirmative Defense as to L.A., and the question of a legal duty owned by the Department to Makayla and L.A., and **DENIED** in all other respects;

3.     Plaintiffs' Motion for Partial Summary Judgment Re: Fault and Causation (Doc. 109) should be **DENIED**.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

IT IS ORDERED.

DATED this 20th day of February, 2024.

TIMOTHY J. CAVAN
United States Magistrate Judge

51